**KURTZ v. UNITED STATES.**
**A. D. No. 1015.**

United States District Court,
S. D. Texas, Houston Division.
Jan. 5, 1953.

Mandell & Wright (Arthur J. Mandell), Houston, Tex., for libellant.

Brian S. Odem, U. S. Atty., W. G. Winters, Jr., Asst. U. S. Atty., Royston & Rayzor (John R. Brown), Houston, Tex., for respondent.

KENNERLY, Chief Judge.

Libellant, Melvin C. Kurtz, a seaman and engine room wiper on the Steamship "Signals Hills," belonging to the United States of America (for brevity sometimes called Government), brings this proceeding in Admiralty against the Government under the Jones Act, Section 688, Title 46 U.S.C.A., for damages, and in Admiralty for indemnity or compensation and maintenance, caused by an alleged injury claimed to have been sustained by Libellant on such Steamship November 1, 1947. It is alleged that at the time such Steamship was being operated by Pacific Tankers, Inc. under a contract with the Government, and liability by the Government is claimed under Cosmopolitan Shipping Co. v. McAllister, 337 U.S. 783, 69 S.Ct. 1317, 93 L.Ed. 1692.

The following questions arise in the case and are disposed of as follows:

1: The suit is brought under Sections 741 to 745, Title 46 U.S.C.A., and the question of Libellant's right to proceed under those Sections was raised by Respondent and determined by a ruling on a Stipulation filed and in an Opinion filed July 18, 1952, to which I refer, and to which ruling I adhere. See Opinion and cases there cited.

2: Such Stipulation also sufficiently shows that Libellant's claim was presented and administratively disallowed under the Clarification Act of 1943, Section 1291(a), Title 50 U.S.C.A.Appendix [see 46 U.S.C.A. § 1241a]. It was so held in North v. United States, D.C., 122 F.Supp. 696, a similar case in this Court.[1]

---

1. The portion of the Opinion in the North case applicable here is as follows:

"Libellant alleges that his claim herein has been 'administratively disallowed' under the provisions of Title 50 U.S.C.A. Appendix, § 1291(a). This Respondent denies.

"I think it is clear that under the rule laid down in Fox v. Alcoa S. S. Co., 5 Cir., 143 F.2d 667, Libellant's claim has never reached the War Shipping Administration or the Administrator thereof. See also Militano v. United States, 2 Cir., 156 F.2d 599. Rodinciuc v. United States, 3 Cir., 175 F.2d 479.

"However, according to such Stipulation, such claim did reach and was presented by Libellant to the American Petroleum Transport Corporation, who is stipulated to have been 'Respondent's General Operating Agent.' Section 304.-25 of the Regulations promulgated by said War Shipping Administration or Administrator, found in Title 46 of the Code of Federal Regulations, Page 699, reads as follows (italics mine):

" 'Sec. 304.25. Claims, with whom filed. Claims based upon any decision of the Maritime War Emergency Board or any insurance policy issued by the War Shipping Administration, excluding claims for loss of or damage to personal effects (if the insured is alive), bonus, and detention and repatriation benefits, shall be filed with the Chief Adjuster, Division of Wartime Insurance, War Shipping Administration, 99 John Street, New York City, or such other agencies or persons as may

3: Coming now to the case on the merits.

The first question is whether or not Libellant was in fact injured as claimed by him by a ladder falling on him while working as a seaman on the Steamship "Signals Hills." Also whether there was such negligence on the part of those in charge of the "Signals Hills," or whether such Steamship was unseaworthy, etc., permitting a recovery of damages, indemnity, maintenance, etc. by Libellant.

■ It is clear I think and I find that while Libellant, a seaman and wiper in the engine room on the Steamship "Signals Hills," was working at a work bench in the machine shop of such Steamship, a wooden ladder about 12 feet long, which was on and was used on such Steamship and was an essential part of the Steamship gear, fell on him and injured him. No one other than Libellant saw the accident, but Libellant testified that it occurred, and the First Assistant Engineer soon after the time of such occurrence found the ladder lying on the bench "with two or three rungs above the bench."

■ Whether there was or was not negligence on the part of those in charge of the Steamship "Signals Hills" which proximately caused the injury to Libellant is a question about which there is much dispute. Negligence is shown only circumstantially. It is shown that there was a place where the ladder was kept and that when it was in its place, it was safe and would, generally speaking, not fall. This supports the finding which I make that the ladder was not in its proper place and where it was usually kept, and that wherever it was, it was unsecurely fastened when it fell on Libellant. It was negligence not to place the ladder in its proper place and not to securely fasten it. But there is no direct evidence to show what particular person or persons were guilty of such negligence, and, citing the cases shown in the margin,[2] the Government says that there is no sufficient evidence either of negligence by those in charge of the Steamship, nor evidence that the Steamship was unseaworthy, to support a recovery by Libellant. The fact, however, that the ladder was a necessary part of the ship's gear and used by the officers and members of the crew on the ship, and that the ship had been for some days at sea and probably was somewhere in mid-ocean, and that the officers and members of the crew were the only persons who used the ladder, supports a finding which I make that some one or more of those in charge of the ship was negligent in not placing the ladder in its proper place and in not securely fastening it. Also that the Steamship was unseaworthy. I find also negligence as set out in Libellant's Second Amended Libel, as follows:

In failing to supply Libellant with a safe place in which to work.

be designated by the Chief Adjuster for the purpose of determining the allowance or disallowance of such claim. *All other claims, including claims for loss of or damage to personal effects (if the insured is alive), bonus, and detention and repatriation benefits, shall be filed with the General Agent of the vessel with respect to which such claims arose, or such Agent's Berth sub-agent to which the former may refer the claims for handling.'*

"Libellant's presentation of such claim to the American Petroleum Corporation, who it appears was such General Agent, was during the period beginning September 17, 1947, down to November 9, 1947, and more than 60 days elapsed after such presentation of such claim before this suit was filed. · I think that under the

rule laid down in Godbout v. Eastern Steamship Lines, D.C., 82 F.Supp. 467, McInnis v. United States, 9 Cir., 152 F.2d 387, and Thurston v. United States, 9 Cir., 179 F.2d 514, Libellant complied with the requirements of the Act of March 24, 1943, 50 U.S.C.A.Appendix, § 1291(a). In the last two cases cited, it emphasized that Laws respecting claims of seamen must be liberally construed."

2. Cookingham v. U. S., 3 Cir., 1950, 184 F.2d 213, writ denied 1951, 340 U.S. 935, 71 S.Ct. 495, 95 L.Ed. 675; Adamowski v. Gulf Oil Corp., D.C.Pa.1950, 93 F.Supp. 115; Shannon v. Union Barge Line Corp., D.C., 100 F.Supp. 13, affirmed 3 Cir., 1952, 194 F.2d 584, 585; Holliday v. Pacific Atlantic S. S. Co., D.C.Del. 1951, 99 F.Supp. 173.

In failing to lash said ladder to the girder, or some other object, so that the same may not fall.

In failing to properly secure said ladder so that the same would not fall.

In failing to inspect said ladder in order to determine that the same is securely lashed and would not fall upon anyone working in the machine shop.

In permitting said ladder to remain in said place without lashing it properly.

In so placing the ladder in said machine shop that the pitching and rolling of the vessel caused the same to fall.

In failing to secure the ladder properly, or remove the same from said machine shop when the vessel was in rough seas.

Libellant himself was in no way negligent.

■ 4: The next question is the nature and extent of Libellant's injuries from being struck by the ladder.

Libellant after his injury received such treatment, chiefly to allay his pain, as the ship's purser could give him, but there was no diagnosis from the time of his injury to about November 18, 1947, when the ship arrived in port. His treatment from November 18, 1947, to December 2, 1947, by the Marine Hospital at Galveston as an out patient and his examination by Dr. Zionts on November 25, 1947, and December 2, 1947, while not very revealing, do not show a serious condition. Neither does his examination and short treatment by Dr. Squillacote in New Britain, Connecticut, show a serious condition. These, together with the X-rays showing no injury to his spine, and Libellant's several and persistent assertions of good health on occasions when he was expected to and should have spoken the truth, as well as his ability to earn wages and his marriage, indicate I think that he was not seriously injured. However, his examination by Dr. Johnson in Longview, Washington, and his more recent examination, together with a myelogram, convince me that Libellant has a herniated disc, but that his condition is not now and has not been through the period since the injury very painful, serious, or disabling. This herniated disc can be corrected by an operation costing all told probably $1,500. If Libellant had continued on with the treatment from the Marine Hospital at Galveston, or with Dr. Squillacote, the Connecticut doctor, he probably would have had an operation and been fully restored to health within six months after the date of his injury. Of course, there is some danger attached to such an operation, and they are not always successful, but there is nothing about Libellant's condition to indicate that good results may not reasonably be expected from such an operation.

No one can say with absolute certainty that Libellant's injury by the ladder caused the herniated disc with which Libellant is suffering. Largely because there is no evidence of any other injury, I think and find that it was caused by the ladder.

■ 5: The question of the amount of damages and maintenance to which Libellant is entitled is difficult. As to pain and suffering, I think it fair to say when all the facts are considered, including Libellant's various claims of good health, pain and suffering did not exist beyond six months after the date of accident. I think also six months would cover the aggregate time lost by Libellant from date of injury to date of trial. In the absence of an operation for herniated disc, Libellant's injuries are probably permanent, but not I think wholly or greatly disabling. For damages for all these, i. e., pain and suffering $2,000, and loss of time, permanent injury, etc., $4,000, total $6,000, is allowed. On the question of maintenance, I think six months, or one hundred and eighty days, at $6.00 per day, amounting to $1,080, is fair.

Judgment for Libellant for $7,080 will enter. Let proper decree be drawn and presented.