REGAN, Judge.
Plaintiff, Sylvan Verdin, instituted this suit against the defendants, the Succession of Felix A. Wiseman, Jr., and Mrs. Zelda Agloff, widow of Felix A. Wiseman, Jr., as the owners of a tugboat designated as “Mr. Mark”, endeavoring to recover the sum of $100,000.00 for injuries which he sustained when he fell from a ladder as he descended from the deck to the engine room of the ship. Plaintiff explained therein that the accident occurred as a result of the negligence of the owners thereof and the unseaworthiness of the vessel.
The defendants answered and initially asserted that the Succession was not a proper party defendant. On the merits, they denied the existence of any negligence on their part and insisted that the vessel was seaworthy.[1]
From a judgment awarding plaintiff the sum of $35.00 per week for a period not to exceed 400 weeks[2] for past and future maintenance against both Mrs. Zelda Ag-loff Wiseman and the Succession of Felix A. Wiseman, Jr., the defendants have prosecuted this appeal. Plaintiff has answered the appeal, requesting that the award be increased to $100,000.00.
Plaintiff’s petition does not specify the nature of his cause of action; however, the trial court very properly treated it as a combined action to recover damages for negligent injury in conformity with the rationale of the Jones Act, and also as a suit for maintenance and cure.[3]
Relative to plaintiff’s claim under the Jones Act, he testified that he was employed as a relief captain aboard the tugboat “Mr. Mark” on August 28, 1962. In the course of descending a ladder which extended from the deck to the engine room, he slipped and fell a distance of four feet, causing him to injure his back, chest, and knee. When the accident occurred, he was carrying a mop in one hand and a bucket in the other, which he used to clean the engine room. Plaintiff had been employed both as a deck hand and as a relief skipper aboard the “Mr. Mark” by the Wiseman family from 1956 until he was injured. He said the vessel had always been maintained in a seaworthy condition, and that the ladder, which was constructed of a perforated steel material, was in excellent repair when he fell.
Plaintiff did state that the ladder was without handrailings on either side thereof. However, it was approximately four feet high, and no evidence was introduced which' would even tend to reveal that the lack of a handrail constituted unseaworthiness. In fact, the litigants stipulated that if John Lombas [4] was requested to appear as a witness for the defendant, he would relate that ladders similar to the one aboard the “Mr. Mark” are generally used on tugboats safely; thus, the failure to provide a railing did not render the ladder unseaworthy in any respect.
*69 In view of the fact that the plaintiff affirmatively established as a fact that the vessel was seaworthy, and that the accident occurred through his own negligence, the trial judge properly dismissed his damage suit. However, he did permit the plaintiff to recover a judgment for maintenance and cure, which the defendants insist is neither supported by the medical evidence adduced on the trial hereof or by the law applicable thereto.
The pertinent facts relating to plaintiff’s suit for maintenance and cure are these:
On the date he was injured, he returned to his home complaining of severe back and chest pains. His wife consulted their family physician, Dr. William Bagnetto, a general practitioner, who, after an examination at home, ordered him removed to the West Jefferson General Hospital for observation. He remained there for three days and was treated for an injury to the chest and a contusion of the low back. The physician’s diagnosis revealed that the plaintiff’s back muscles were in spasm, and his chest was swollen and tender.
Dr. Bagnetto treated plaintiff as an outpatient biweekly at his office, primarily for complaints relating to his back, until this matter was tried in April of 1963. In October of 1962, he referred the plaintiff to Dr. Winters, an orthopedist, since he was not satisfied with his progress. Dr. Bag-netto’s last examination of the plaintiff occurred three days before the trial hereof. Relative thereto he testified that he was unable to discover any objective findings to support plaintiff’s complaints of low back pain, but he did state that pain could exist without objective manifestations. In addition thereto, he expressed the opinion that the plaintiff’s injury possessed some degree of permanency, and his pain would incapacitate him from working. He was then interrogated relative to future treatment:
“Q. Is there any other treatment you would specify for this man, beside what you are giving him?
“A. I feel like I have nothing more to offer him. I did recommend that he go back to Dr. Winters, but he told me that he was told by either your firm or someone else, to see another orthopedist.”
In the course of the trial, plaintiff complained of a knee injury which he said resulted from the accident, but Dr. Bagnetto’s records failed to reveal any treatment therefor.
Plaintiff, at the defendants’ request, was examined by two orthopedic surgeons, both of whom discovered a spondylolesthesis at the fifth lumbar vertebrae, a developmental defect of the back which occurs when two parts of the vertebral arch fail to join together during growth. In addition thereto, their examination disclosed a ligamentous looseness or laxity of the left knee, a condition causing instability which is usually referred to as a “football knee”.
One of the specialists, Dr. John Saer, examined him on January 28, 1963. He related that the plaintiff complained of pain in the low back and the left knee, which he had endured since the occurrence of the accident in August of 1962. He was of the opinion that the spondylolesthesis actually occurred when the plaintiff was six or seven years old. Although he made no objective findings to support plaintiff’s complaints of pain in the back, he conceded the possibility that he could be suffering from the pain he described, and that the trauma to the area produced by his fall could have caused a back pain not previously experienced by him. Relative to the condition of his knee, Dr. Saer believed that the injury predated the accident because of plaintiff’s failure to complain thereof immediately after his fall.
Dr. G. Gernon Brown, defendant’s other specialist, testified that he examined the plaintiff on March 19, 1963, which was approximately three weeks prior to the trial. He also failed to observe objective symptoms to support his complaints of back pain, but he did concede that the trauma could *70 produce pain not previously experienced from the developmental defect and that pain could exist without objective manifestations in support of the complaint. With reference to the knee injury, he discovered instability of the ligaments and swelling of plaintiff’s left thigh. He stated that the objective findings in this area would indicate that the knee condition was more painful than plaintiff had indicated.
Plaintiff and his wife both testified that the back and knee injuries caused him severe pain immediately after the accident, and that these conditions had not noticeably improved up to the date of the trial hereof. Plaintiff stated that he had been wearing a back corset prescribed by Dr. Winters to alleviate the pain.
When the accident occurred, plaintiff was 47 years of age. For more than twenty years prior thereto, he had worked aboard tugboats performing heavy manual labor either as a deck hand or as a relief skipper, and no disabling injury or illness marred his work record.
Plaintiff was paid maintenance by the defendant, Mrs. Wiseman, from September 1, 1962, through December 19, 1962, at the rate of $7.00 per day. She did not discontinue payments based on medical advice to the effect that the plaintiff had reached maximum cure, but that maintenance was discontinued when she was served with a copy of plaintiff’s petition emanating from this suit.
Predicated on the foregoing evidence, the trial court concluded that the plaintiff was suffering from a “grievous injury” at the time of the trial hereof, which would continue for an indefinite, if not a permanent, period. He then erroneously awarded plaintiff the sum of $35.00 per week for a period of 400 weeks for past and future maintenance, subject to a credit for maintenance previously paid.
Defendants initially assert that the plaintiff failed to establish a continuing disability at the time of the trial by a preponderance of the medical evidence. We are unable to agree with this contention. Plaintiff’s medical expert concluded that his back pain was disabling and indicated that an orthopedist possibly could offer additional treatment to alleviate this condition. He did concede that in his capacity as a general practitioner, he had no further treatment which he could offer to the plaintiff. It is also true that the defendants’ medical experts found no objective manifestations to support plaintiff’s complaints of pain; however, they did admit that it was possible for pain to exist in the absence thereof, and that the trauma could have created pain previously not experienced as the result of a latent back deformity. In addition thereto, Dr. Brown also found objective evidence to support the plaintiff’s complaints of pain in his knee when he examined him several weeks before the trial hereof.
Defendants also argue that the plaintiff failed to call Dr. Winters, the orthopedist who prescribed his corset, to testify, and a presumption is created that his testimony would have been adverse. The record reflects that plaintiff’s counsel stated he would not call Dr. Winters because he did not believe that his testimony was necessary. Defense counsel then pointed out that this would create a presumption that his testimony would be unfavorable, and the trial judge stated that he would draw no such inference from Dr. Winters’ failure to appear on plaintiff’s behalf. While we agree that as a matter of law the presumption does exist that an absent witness’s testimony will be presumed to be adverse to the party who failed to call him, we think the presumption is overcome by both the medical evidence and the lay testimony. In addition thereto, we are favorably impressed with the plaintiff’s excellent work record prior to the accident. Therefore, we are convinced that the plaintiff was still suffering from the injuries incurred aboard the “Mr. Mark” when the trial hereof occurred.
*71 Counsel for the defendants also contends that even if we conclude that the plaintiff was disabled at the time of the trial, he was no longer entitled to maintenance, since he had attained maximum cure long before the trial.
Counsel points out that maintenance and cure is a contractual form of compensation afforded by the general maritime law to a seaman injured while in the service of the ship. As a result of the shipping contract between the seaman and the ship owner, the general maritime law has traditionally imposed a duty on the owner to provide maintenance or a living allowance to the injured seaman until he attains maximum cure, plus the medical expenses incurred in restoring him to maximum cure.[5]
We agree that the foregoing is a correct statement of the law; however, we are not in accord with the contention that the evidence preponderates to the effect that the plaintiff has, in fact, reached maximum cure. Defendants rely, to a large extent, upon Dr. Bagnetto’s statement that, as a general practitioner, he had no additional treatment to offer to the plaintiff. It will be recalled that the plaintiff’s doctor did not say that medical science, as a whole, had nothing further to offer plaintiff. In fact, it was his recommendation that the plaintiff consult an orthopedist for additional treatment.
We, therefore, are likewise convinced that the plaintiff is entitled to maintenance and cure through the date of the trial hereof.
Counsel for the defendants also complains that the trial court erred in awarding future maintenance to the plaintiff and in predicating its award on compensation afforded totally disabled workmen, in conformity with the rationale of the Louisiana Workmen’s Compensation Act.
The law defining the extent of the shipowner’s duty to provide maintenance and cure is succinctly stated in Norris, The Law of Seamen, Vol. 1, Sec. 561, as follows:
“The duty of the shipowner to provide maintenance and cure to the sick or injured seaman does not end with the voyage but extends beyond the voyage for a reasonable time in which to effect such improvement in the seaman’s condition, as reasonably may be expected to result from nursing, care and medical treatment.
“A seaman’s right to maintenance and cure continues for a reasonable time after the voyage has ended; this period consists of the time necessary to effect a maximum cure, i. e. so that no further improvement in the seaman’s condition is to be expected.
“The obligation ends when the medical evidence or opinion is to the effect that the maximum cure possible has been effected.”
However, if maximum cure has not occurred at the time of the trial, the court possesses the discretionary power to award future maintenance and cure only if the cure needed and the time required therefor is established by competent medical evidence.
In Fernandez v. United Fruit Company,[6] the court pointed out that:
If at the time of the trial the seaman has not reached the maximum cure possible, the court in its discretion may award him such amounts as may be needful in the immediate future for the maintenance and cure of a kind and for a period which can be definitely ascertained.
This rule is more fully explained in Norris, The Law of Seamen, Vol. 1, Sec. 565, as follows:
“Therefore, the courts are empowered to award a decree of maintenance and cure, when justified, up to the time of the trial and for such reasonable sums as the circumstances of the case *72 indicate to cover future treatment for a foreseeable future period of time.
“The ‘foreseeable period’ contemplates such time as is evidenced by the testimony of competent medical witnesses. The amount of such award and the period of time for which it is intended to cover are matters for the sound discretion of the court.”
The extent of the shipowner’s liability for maintenance and cure is limited to the time maximum cure has been attained, even in instances where the seaman may be disabled for life as the result of injuries incurred in the service of the ship.[7]
In view of what we have said here-inabove, we are led to the inevitable conclusion that the plaintiff was entitled to maintenance and cure only through April 5, 1963, the date of the termination of the trial. His right to future maintenance and cure is precluded by his failure to establish, through the medium of medical evidence, the necessity for future treatment and the length of time required- therefor.
Defendant, Mrs. Wiseman, had paid maintenance of $7.00 per day from September 1, 1963, through December 19, 1963; therefore, daily maintenance is due beginning as of December 20, 1962, and ending April 5, 1963, a period of 107 days. The amount awarded as maintenance is a matter lying within the sound discretion of the trial court; however, we are not bound by the judgment below awarding $35.00 per week, since it was predicated upon the monetary benefits emanating from the Louisiana Workmen’s Compensation Act. We believe that $7.00 per day is a fair allowance for maintenance, and we have used as a guide similar awards made by federal judges whose courts are located in this immediate area. Within very recent years, the federal judges have allowed either $6.00 or $8.00 daily maintenance, thus, averaging both, the $7.00 originally tendered by defendants appears equitable.[8]
Multiplying 107 days by $7.00, we conclude that the plaintiff is entitled to an award for maintenance amounting to the sum of $749.00; therefore, the judgment of the lower court should be reduced accordingly. In addition thereto, the plaintiff’s doctor testified that he had expended $410.00 for medical services rendered to the date of the trial. We are of the opinion that he is entitled to this amount as cure. Thus, the plaintiff’s total award should properly be for the sum of $1,159.00.
Judgment was rendered against the Succession of Felix Wiseman, Jr., and Mrs. Zelda Agloff Wiseman. On the appeal hereof, the defendant again asserted that a Succession cannot be made a litigant in a lawsuit. The record reveals that Felix Wiseman, Jr., died several months before the accident, and his wife was operating his shipping business when the accident occurred. On September 10, 1962, two weeks after the accident, Mrs. Wiseman and her seven children were placed in possession of the estate, without any administration thereof having occurred.
We are in accord with defendants’ contention that the Succession is not a proper party defendant. The LSA Code of Civil Procedure, Article 734 reads :
“The succession representative appointed by a court of this state is the *73 proper defendant in an action to enforce an obligation of the deceased or of his succession, while the latter is under administration. The heirs or legatees of the deceased, whether present or represented in the state or not, need not be joined as parties, whether the action is personal, real, or mixed.”
When this suit was filed, Mrs. Wiseman had been placed in possession, and the judgment should have been rendered against her alone.
For the reasons assigned, the judgment appealed from is amended to decrease the award to plaintiff from $35.00 per week for a period of 400 weeks, subject to a credit of $770.00, or to a total of $1,159.00. It is further amended to exclude the Succession of Felix A. Wiseman, Jr., as a defendant cast in judgment, and in all other respects the judgment appealed from is affirmed.
Plaintiff is to pay the costs of this appeal.
Amended and affirmed.

. In tlie alternative, defendants prayed for a judgment limiting their liability, based upon the assertion that the vessel, plus her cargo at the time of the accident, was not valued at $100,000.00.

. Subject to a credit of $770.00 for maintenance previously paid.

. This action was brought in state court under the “saving to suitors” clause of 28 U.S.C. § 1333, which provides in part:
“Tlie district court shall have original jurisdiction, exclusive of the courts of the States, of:
“(1) Any civil case of admiralty or maritime jurisdiction, saving to suitors in all cases all other remedies to which they are otherwise entitled. * * * ”

.The record fails to disclose his occupation, but we assume from the stipulation that he was well qualified to testify in this respect.

. Martin J. Norris, The Law of Seamen, Vol. 1, Sec. 530 and Sec. 537.

. D.C., 183 F.Supp. 642, affirmed, 5 Cir., 287 F.2d 447.

. Calmar Steamship Corp. v. Taylor, 303 U.S. 525, 58 S.Ct. 651, 82 L.Ed. 993, 1938 AMC 341; Farrell v. United States, 336 U.S. 511, 69 S.Ct. 707, 93 L.Ed. 850.

. The following awards for maintenance were made by federal courts within the Eifth Circuit within recent years: Lamon v. Standard Oil Company, 117 F.Supp. 831 (E.D.La.1954)—$6.00; Curd v. United States, 118 F.Supp. 921, 1954 AMO 484 (E.D.La.1954)—$8.00; Kurtz v. United States, 121 F.Supp. 856, 1954 AMC 1911 (S.D.Tex.1954)—$6.00; Rose v. Bloomfield Steamship Company, 162 F.Supp. 576 (E.D.La.1958)—$8.00; Creppel v. J. W. Banta Towing, Inc., 202 F.Supp. 508 (E.D.La.1962)—$8.00; Freeman v. Greenville Towing Company, 201 F.Supp. 770 (N.D.Miss.1962)—$6.00.