Charles S. GINDVILLE

v.

AMERICAN-HAWAIIAN STEAMSHIP
COMPANY, Appellant.

No. 11585.

United States Court of Appeals
Third Circuit.

Argued June 16, 1955.
Decided July 18, 1955.

Mark D. Alspach, Philadelphia, Pa. (Joseph J. Murphy, T. E. Byrne, Jr., Krusen, Evans & Shaw, Philadelphia, Pa., on the brief), for appellant.

Milton M. Borowsky, Philadelphia, Pa. (Charles Lakatos, Freedman, Landy & Lorry, Philadelphia, Pa., on the brief), for appellee.

Before BIGGS, Chief Judge, and GOODRICH and McLAUGHLIN, Circuit Judges.

GOODRICH, Circuit Judge.

This is an action by a longshoreman to recover damages for personal injuries sustained during the unloading of defendant's ship in Philadelphia on February 19, 1952. Plaintiff had a verdict and the defendant appeals.

Taking the evidence most favorable to the plaintiff, as we must after a verdict in his favor, the facts may be briefly summarized as follows: The plaintiff was a member of a crew of longshoremen employed to unload a cargo of steel rods from the defendant's ship. The rods were stowed in the lowest cargo compartment under the direction of the

747

shipper's chief officer at St. Nazaire, France. They were not bundled nor was there any dunnage used in their stowing. When the vessel docked in Philadelphia and was to be unloaded it was discovered that the rods were tangled, crisscrossed and generally mixed up "like spaghettis." The unloading process, which consisted in making the rods into bundles and hoisting them to the main deck with a winch, was attended with some difficulty because rods projected from time to time from the bundle. A particular load would sometimes have to be "snaked" up through the various hatch openings to reach the main deck. In the course of hoisting a bundle of these rods in the manner just described, the load on the end of the cable started swinging and a projecting rod hit the plaintiff as he was backed against the side of the hold trying to avoid the danger. He thereupon suffered the injuries complained of.

■ The suit was based, first, upon alleged negligence of the defendant in the manner of loading the cargo and, secondly, upon a charge of unseaworthiness because of the unsafe manner in which the cargo was stowed. The defendant asserts broadly that our decision in Bruszewski v. Isthmian S. S. Co., 1947, 163 F.2d 720, 1948, certiorari denied 333 U.S. 828, 68 S.Ct. 451, 92 L.Ed. 1113, settles this case in its favor, arguing that the danger, if any, was perfectly apparent and that the plaintiff assumed the risk when he went to work in the face of such apparent danger. We think the Bruszewski case does not stand for any such sweeping proposition as this. Indeed, it is quite narrow. It means no more than if a carpenter is called in to

repair a hole in a roof he cannot complain that a roof with a hole in it is an unsafe place to work. Nor do we think that it is fair to characterize the difference between Bruszewski and Gindville as a mere matter of semantics. Gindville did not come to repair any condition. He came to help unload a cargo. If the difference is not apparent further discussion will not make it so.

■ The defendant complains that the question of seaworthiness was left to the jury. That, it says, was wrong; the ship was not unseaworthy. Unseaworthiness, it contends, is a doctrine which may apply only to the ship and its equipment; not to the stowage of its cargo. If this is too broad a proposition, then it urges that unseaworthiness as to stowage of cargo is to be limited to cargo damage only. The Thomas P. Beal, 3 Cir., 1926, 11 F.2d 49 and Pioneer Import Corp. v. The Lafcomo, 2 Cir., 1943, 138 F.2d 907, apply the unseaworthy doctrine to improper stowage so far as a shipper's right to damages for injury to the cargo is concerned. Improper stowage as a condition of negligence and unseaworthiness was also applied in a stevedore's personal injury case in Andersen v. Lorentzen, 2 Cir., 1947, 160 F.2d 173. And directly contrary to defendant's argument is Palazzolo v. Pan-Atlantic Steamship Corp., 2 Cir., 1954, 211 F.2d 277,[1] which expressly holds that proper stowage is an element of seaworthiness and the warranty applies to a stevedore in a suit for personal injuries caused by the improper stowage of large rolls of pulp. We think the Palazzolo case is correct and shows the now prevailing tendency in the extension of the doctrine

1. Certiorari was granted in this case on October 14, 1954, Ryan Stevedoring Co. v. Pan-Atlantic Steamship Corp., 1954, 348 U.S. 813, 75 S.Ct. 41, and the decision was subsequently affirmed by an equally divided Court. 1955, 349 U.S. 901, 75 S.Ct. 575. According to United States Law Week, the contention made on the petition for certiorari involved the question of indemnification over and not the question of the stevedore's right to recovery. 23 U.S. Law Week 3054 (1954).

See also Daniels v. Pacific-Atlantic S. S. Co., D.C.E.D.N.Y.1954, 120 F.Supp. 96, 98, where the court stated: "The doctrine of unseaworthiness has been extended to include improper stowage of cargo, causing personal injuries. The cases of La Guerra v. Brasileiro, 2 Cir., 1942, 124 F.2d 553, certiorari denied 315 U.S. 824, 62 S.Ct. 918, 86 L.Ed. 1220, and Fodera v. Booth American Shipping Corporation, 2 Cir., 1947, 159 F.2d 795, support that rule."

of unseaworthiness, the last notable example of which is the Supreme Court decision in Boudoin v. Lykes Bros., Inc., 1955, 348 U.S. 336, 75 S.Ct. 382, 384. There unseaworthiness was found to exist by reason of a person of " 'dangerous propensities and proclivities' " among the crew.

 Defendant also brings back to us our decision in Cookingham v. United States, 1950, 184 F.2d 213, certiorari denied 1951, 340 U.S. 935, 71 S.Ct. 495, 95 L.Ed. 675. The argument is that the unsafe condition was as "transitory" here as that created by the jello on the ladder in the Cookingham litigation. We disagree. We agree that "transitory" is an elastic word but we think it is not applicable to a dangerous situation created by improper stowage for an ocean voyage. It is certainly quite different in fact from the momentary presence of foreign substance on the ladder in the Cookingham case.

The negligence issue was submitted to the jury who found in the plaintiff's favor. One need only read the opinion in Socony-Vacuum Oil Co. v. Smith, 1939, 305 U.S. 424, 59 S.Ct. 262, 83 L.Ed. 265, to get the rule with regard to the application of the doctrines of assumption of risk and contributory negligence in a maritime injuries case. And one need only read Seas Shipping Co. v. Sieracki, 1946, 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099, to see the extention of rules protecting members of ships' crews to the longshoremen who come on to do what was originally part of the seamen's tasks.[2]

 Defendant complains that a master mariner who had a substantial record of sea service was allowed to give expert testimony. This man, defendant says, was not qualified so to do because his experience did not include ship loads of steel rods. The same point was made in the Palazzolo case, supra, and the answer the court gave there applies here. This is a matter for the discretion of the trial court and unless that discretion is departed from it is not subject to review by us. Furthermore, we have no evidence of the specialization of the problems in marine cargo stowage and carriage in the way that highly narrow and highly expert specialization has become established in the world of medicine.

The judgment of the district court will be affirmed.

---

2. See also, Pope & Talbot, Inc., v. Hawn, 1953, 346 U.S. 406, 74 S.Ct. 202, 98 L. Ed. 143; Alaska Steamship Co. v. Petterson, 1954, 347 U.S. 396, 74 S.Ct. 601, 98 L.Ed. 798, affirming per curiam, 9 Cir., 1953, 205 F.2d 478; Rogers v. United States Lines, 1954, 347 U.S. 984, 74 S.Ct. 849, 98 L.Ed. 1120, affirming per curiam, 3 Cir., 1953, 205 F.2d 57.