**PENEDO CIA NAVIERA S.A., claimant-respondent, Appellant,**

v.

**Nicholas MANIATIS, libellant, Appellee.**

**No. 7716.**

United States Court of Appeals Fourth Circuit.

Argued Oct. 21, 1958.

Decided Jan. 5, 1959.

John W. Winston, Norfolk, Va. (Seawell, Johnston, McCoy & Winston, Norfolk, Va., on brief), for appellant.

Sidney H. Kelsey, Norfolk, Va. (L. David Lindauer and Babalas & Breit, Norfolk, Va., on brief), for appellee.

Before SOPER, Circuit Judge, and BARKSDALE and BRYAN, District Judges.

SOPER, Circuit Judge.

Nicholas Maniatis, a Greek citizen employed as a seaman by Penedo Cia Naviera S.A., on the Liberian Steamship Archipelago, filed a libel against the ship and the owner for injuries received in the course of his employment, which resulted in the loss of the tip of his right ring finger. He alleged that the injury was caused by the negligence of the officers and members of the crew of the vessel and the unseaworthiness of the vessel, and claimed damages as well as maintenance and cure. After a hearing the District Judge entered a decree in his favor for $3,857, which included $3,-500 for damages for his injury and wages, $337 for maintenance and cure, and $20 for medicine. On this appeal it is contended that the judgment was wrong on the ground that the libellant was not entitled to any recovery for damages and that even if damages were properly awarded, he could not recover both wages and maintenance for the same period of time. The pertinent facts may be summarized as follows:

While the vessel was enroute from Rotterdam to Hampton Roads at Norfolk, Virginia, the crew had painted various cargo booms as they lay in cradles in horizontal positions. That part of the booms which rested in the cradles could not be reached for painting without raising the booms and this could not be done until the vessel reached port. At that time the remaining portions of the booms were painted by lifting them up a short distance out of the cradles, holding them suspended long enough for the painting and then raising them up all the way in preparation for the loading of cargo.

The accident happened when the libellant was endeavoring to paint the underside of the starboard boom at No. 2 hatch. In order to raise the boom a wire, called a topping lift fall, is shackled to the far end of the boom. This wire extends to the top of the mast to which the boom is secured and passes through

blocks on the mast to a cargo winch on the deck below. On the end of the winch is a round steel drum which turns when the winch is operated and is used in raising and lowering booms. The center of the drum is lower than the edges and is so built as to force the turns of the rope on the drum to slide away from the edges toward the middle thereof. In this way the turns of the wire loop are prevented from going off the edge of the drum as they build up on the sides.

When it is desired to lift the boom, several turns of the wire around the drum are made by a seaman, who then holds the wire taut, while another seaman operates the winch. As the winch turns the wire falls off the drum and is coiled on the deck by the seaman holding it. When the boom is raised to its full height a chain stopper is used to take the weight off the winch and the wire fall is then secured to a cleat on the mast.

On the morning of the accident the libellant and other seamen were engaged in the work of raising the cargo booms so that the hatches might be opened and the loading of the cargo begun. When the crew reached the starboard boom of the No. 2 hatch the libellant went on the bridge deck to paint the underside of the boom. One sailor operated the winch and another handled the wire fall. The latter took three or four turns of the wire around the drum and then held it tight as it began to take the strain of the weight off the boom. Shortly thereafter the accident happened in the following manner, quoting from the opinion of the District Judge [159 F.Supp. 248]:

" * * * The starboard winch at the No. 2 hatch raised the boom a matter of eight to ten inches where it was stopped and, just as libellant was beginning his work, the boom gave way catching libellant's finger in the cradle. In explanation of the cause of the accident it is said that, as the winch operates, a wire passes around a drum (sometimes referred to as a 'niggerhead') which is so constructed that the wire will build up on the sides of the drum and then drop or slide to the middle of said drum. A marine surveyor testified that there existed an approximate 25 per cent slope from the outside of the drum end to the middle thereof, and that the drum is constructed in that manner to enable the wire to slide readily toward the center of same. As the line comes off the drum it is held by a fellow crew member in a tight manner to prevent the wire from slipping on the drum, but the holder of this line may permit sufficient slack to enable the wire to slide to the center of the drum.

"In this case the crew member holding the wire insists that it was held properly and tightly, but the wire slipped on the drum nevertheless. The marine surveyor concedes that the wire on the drum would not slip if properly held, unless the drum had been recently painted or rust was present on the wire or drum which could cause a slipping. In short, if properly operated and properly maintained, the wire would not slip on the drum and the accident would not have occurred. This is either 'unseaworthiness' as known prior to Mahnich, or 'operating negligence' equivalent to 'unseaworthiness' as stated in Machnich, or both."

It is obvious that the District Judge did not decide whether the boom fell because the ship's equipment was defective or because the seaman in charge of the wire held it too loose as it was uncoiled from the drum. The District Judge took into consideration the consensus of counsel that the case is not governed by the statutory law of the United States but by the general maritime law which prevails in Liberia, since the vessel flew the flag of that country, but he was of the opinion that in the present state of that law as it is now understood in the United States the ship is liable whether the accident was due to unseaworthiness of the vessel or the operative negligence of a member of the

crew. He relied on the decision of the Supreme Court in Mahnich v. Southern S.S. Co., 321 U.S. 96, 64 S.Ct. 455, 88 L.Ed. 561, where recovery was allowed to a seaman who was injured through the collapse of a staging caused by the parting of a piece of defective rope, which had been carelessly selected by an officer of the ship although there was sound rope on board available for the job. This decision is viewed in some quarters as showing that the doctrine of unseaworthiness has come to include not only defects in the structure of the ship and its appliances but also the negligent operation of seaworthy equipment. See Gilmore and Black, The Law of Admiralty, § 6–39.

■ The established rule in the United States prior to legislative changes was that a seaman could recover damages for unseaworthiness but could not recover damages for the negligence of a ship's officer or member of a crew, The Osceola, 189 U.S. 158, 23 S.Ct. 483, 47 L.Ed. 760; Mahnich v. Southern S.S. Co., 321 U.S. 96, 99, 64 S.Ct. 455; and the courts have not as yet generally accepted the view that the obligation of seaworthiness has been so extended that a seaman may now recover damages for negligence contemporaneous with use of seaworthy appliances. See Freitas v. Pacific-Atlantic Steamship Company, 9 Cir., 218 F.2d 562; Imperial Oil Ltd. v. Drlik, 6 Cir., 234 F.2d 4; Crumady v. The Joachim Hendrik Fisser, 3 Cir., 249 F.2d 818, certiorari granted, 357 U.S. 903, 78 S.Ct. 1150, 2 L.Ed.2d 1154; cf. Grillea v. United States, 2 Cir., 232 F.2d 919; Titus v. The Santorini, 9 Cir., 258 F.2d 352, 355; Petterson v. Alaska S.S. Co., 9 Cir., 205 F.2d 475, affirmed, 347 U.S. 396, 74 S.Ct. 601, 98 L.Ed. 798.

■ We therefore remand the case to the District Judge for definite findings of fact as to the cause of the accident. See McAllister v. United States, 348 U.S. 19, 75 S.Ct. 6, 99 L.Ed. 20. If it is found by the District Judge that the accident was caused by deficient equipment, the judgment should be reaffirmed, but if it is found that the accident was due to the negligence of a fellow member of the crew, the case should be dismissed.

■ There was no error in the inclusion in the judgment of an allowance for wages as well as for maintenance. See Buch v. United States, D.C.S.D.N.Y., 122 F.Supp. 25; Kurtz v. United States, D.C. S.D.Texas, 121 F.Supp. 856; Deitz v. United States, D.C.E.D.Pa., 1955 A.M.C. 1132; Castro v. California Tanker Co., City Ct., 151 N.Y.S.2d 998, 1956 A.M.C. 262; Vitco v. Joncich, D.C.S.D.Cal., 130 F.Supp. 945; affirmed, 9 Cir., 234 F.2d 161; Lukmanis v. United States, 2 Cir., 208 F.2d 260; Gilmore and Black, The Law of Admiralty, § 6–9, p. 261; § 6–12, p. 268; cf. McCarthy v. American Eastern Corp., 3 Cir., 175 F.2d 727; Evans v. Schneider Transp. Co., 2 Cir., 250 F.2d 710.

Reversed and remanded for further proceedings.