Carmelo **CANDIANO**, Plaintiff-Appellee,

v.

**MOORE–McCORMACK LINES, INC.,**
Defendant-Appellant,

v.

**JOHN W. McGRATH CORP.**, Third-Party
Defendant-Appellee.

No. 243, Docket 30696.

United States Court of Appeals
Second Circuit.

Argued Dec. 13, 1966.

Decided Aug. 1, 1967.

Martin J. McHugh, New York City (Joseph F. McGoldrick, McHugh & Leonard, James M. Leonard, New York City, on the brief), for defendant-appellant.

Ezekiel Jasper, New York City (Max D. Krongold, New York City, on the brief), for plaintiff-appellee.

Before WATERMAN, MOORE and KAUFMAN, Circuit Judges.

MOORE, Circuit Judge:

Plaintiff, Carmelo Candiano (appellee), a longshoreman, employed by the stevedore, John W. McGrath Corporation (McGrath), was injured while working in the hold of the S.S. MORMACHAWK owned by Moore-McCormack Lines, Inc. (MORMAC). Plaintiff sued Mormac which impleaded McGrath as a third-party defendant. The district court adjudged Mormac liable to plaintiff in the sum of $50,000 and McGrath liable to Mormac for this amount plus Mormac's expenses for defending the action. Mormac appeals, represented on appeal by McGrath's counsel.

The facts as found by the trial court are accepted by appellant Mormac, which challenges only the conclusions of law based thereon. The injury was caused by a beam, which, while being lowered into the lower hold of the No. 3 hatch of the ship, fell and struck plaintiff. The beam was attached to the lowering mechanism by two hooks, one inserted in a hole at one end of the beam, the other hook in a hole at the other end. The operation of securing the beam was carried on by fellow employees. While the beam was being lowered, one of the hooks which apparently had not been fully brought through the hole and secured, became dislodged and the beam fell.

The trial court held that once the negligent attachment had been made, the ship was unseaworthy but also found that "[T]here was an appreciable period of time after the hatch beam was secured to the cargo falls and before the beam fell off as it was being lowered." Whether such "an appreciable period of

time" is sufficient to defeat the application of the doctrine of operational negligence (the district court found that it was) is apparently no longer the relevant inquiry to be made as the doctrine of operational negligence now seems to have been rejected by the Supreme Court as a factor in the determination of liability. See Mascuilli v. United States, 387 U.S. 237, 87 S.Ct. 1705, 18 L.Ed.2d 743 (U. S. May 22, 1967), summarily reversing 358 F.2d 133 (3 Cir. 1966).

In Grillea v. United States, 232 F.2d 919, 922 (2 Cir. 1956), this Circuit distinguished between the legal consequences flowing from operational negligence and those flowing from unseaworthiness, holding that a ship is not rendered unseaworthy by a negligent act that causes an accident during the progress of work on board so long as the act could be "considered as an incident in a continuous course of operation." *Grillea* and a long line of other decisions of this Court attempting to define where operational negligence ends and unseaworthiness begins would seem to be no longer controlling in the light of *Mascuilli*. Although there is no basis in logic for attributing unseaworthiness to a vessel which is in every respect soundly constructed and completely equipped merely because of the negligence of longshoremen or crew members engaged in an operation on board, the term has been created by judicial fiat and used for all practical purposes for imposing absolute liability on shipowner and stevedore.

█ In *Mascuilli,* the question before the Supreme Court on certiorari, to which the Court gave an affirmative answer, was:

"Does dangerous condition caused by stevedore's negligent handling of proper equipment render vessel unseaworthy and its owner liable for resulting injuries?" 35 L.W. 3052.

The facts are to be found in the district court opinion, 241 F.Supp. 354 (E.D.Pa. 1965). A longshoreman Mascuilli had been killed during a loading operation when one or more of his fellow longshoremen negligently caused both the starboard and port vangs on the loading boom to become taut simultaneously thus causing one of the vangs to break. The parts thereof fell on Mascuilli, who had been engaged in a different aspect of the loading operation, and inflicted mortal wounds. The district court sitting without a jury expressly found that the loading equipment was in a sound and safe condition. Finding of fact #35 read as follows:

"35. In summary, the Court finds that the vessel and all of its equipment was in a seaworthy condition at all times, and remained so throughout the entire loading operations. The accident was caused solely by the negligent operation of the stevedoring crew using seaworthy equipment in such a manner as to cause the accident to occur *so instantaneously* that the Third Officer was unable to warn anyone or prevent its happening." 241 F. Supp. at 362 (emphasis added).

The Third Circuit affirmed the holding that the vessel was not unseaworthy solely on the basis of the district court's finding #35 that the accident had been caused solely by the negligence of the stevedoring crew. 358 F.2d at 133. The Supreme Court thereupon summarily reversed, citing Mahnich v. Southern S.S. Co., 321 U.S. 96, 64 S.Ct. 455, 88 L.Ed. 561 (1944) and Crumady v. The Joachim Hendrik Fisser, 358 U.S. 423, 79 S.Ct. 445, 3 L.Ed.2d 413 (1959). Cf. Waldron v. Moore-McCormack Lines, Inc., 386 U. S. 724, 87 S.Ct. 1410, 18 L.Ed.2d 482 (U. S. May 8, 1967) (opinion stresses the "broad remedial purposes of the doctrine of unseaworthiness").

Appellant requests a reconsideration by this court of the longshoreman-shipowner-stevedore triangle and points to the virtual repeal by court decision of the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C. § 901 et

seq. The law in this field is now quite clear; any change must be by legislation or by Supreme Court decision.

Affirmed.