James E. VENABLE, Appellant,

v.

A/S DET FORENEDE DAMPSKIBSSEL-SKAB, Appellee.

No. 11799.

United States Court of Appeals Fourth Circuit.

Argued Jan. 8, 1968.

Decided June 12, 1968.

Rehearing Denied Sept. 16, 1968 en banc.

gaged in stowing the next tier when he stepped backward into an empty space between hogsheads, fell, and sustained serious back injuries. At trial, he argued that inadequate lighting, faulty stowage of the tier of hogsheads upon which he was working and failure to supply and employ dunnage rendered the ship unseaworthy and immediately caused the accident. Testimony relating to these issues varied. That there was no artificial lighting in the stow where the accident occurred is not disputed. The men were forced to depend on natural light passing through the hatch which was slightly more than half open. Most of the witnesses testified that the lighting conditions on the day of the accident were "generally poor," although one opined that conditions were "fair to good" around the hatch but poor in the wings. It is also undisputed that no dunnage was provided by either the stevedore or the shipowner. The defendant offered testimony to the effect that it was not the accepted practice to use dunnage in this particular type of stowage, while plaintiff's fellow workers testified that it would have been used had it been available. The questions of negligence, unseaworthiness and proximate cause were submitted to the jury and it returned a verdict for the steamship company.

On this appeal, Venable raises an issue that has proven troublesome to the federal courts: To what extent can the "operational negligence" alone of a longshoreman or his fellow workers give rise to an action for "unseaworthiness"? The point arises from the trial judge's instruction:

"if you should conclude that this accident was the result of the manner in which the plaintiff and his fellow longshoremen performed their duties on board the vessel and that this was the efficient cause of the accident to the entire exclusion of any negligence of the defendant or any unseaworthiness of the vessel, then, in that event, there would be no liability that could be im-

Sidney H. Kelsey, Norfolk, Va. (Kelsey & Rabinowitz, Norfolk, Va., on brief), for appellant.

Bernard G. Barrow, Norfolk, Va. (Walter B. Martin, Jr., and Vandeventer, Black, Meredith & Martin, Norfolk, Va., on the brief), for appellee.

Before SOBELOFF, BRYAN and BUTZNER, Circuit Judges.

SOBELOFF, Circuit Judge:

From an adverse judgment on his claim for injuries sustained in a fall while stowing hogsheads of tobacco on one of defendant-appellee's vessels, the plaintiff, James Venable, a longshoreman, brings this appeal. His challenge is to the validity of the judge's instructions concerning the admiralty issues raised at trial.

Briefly stated, the testimony indicates that while working on a surface of previously stowed hogsheads in the appellee's vessel, S.S. Oklahoma, appellant was en-

posed upon the defendant under such circumstances."

It is unnecessary to dwell at length on the development and expansion of the doctrine of unseaworthiness. A complete exposition of its history is found in Mahnich v. Southern S.S. Co., 321 U.S. 96, 99–104, 64 S.Ct. 455, 88 L.Ed. 561 (1944), and Mitchell v. Trawler Racer, Inc., 362 U.S. 539, 543–549, 80 S.Ct. 926, 4 L.Ed.2d 941 (1960). It is sufficient to observe that by a steady course of decisions the shipowner's duty to maintain a seaworthy vessel has become increasingly demanding.[1] Although it was once held that a shipowner's duty ended with the delivery of a seaworthy vessel, it came to be recognized that a ship, though safe when delivered, might subsequently be made temporarily unseaworthy by the operational negligence of its crew or by longshoremen in the course of loading or unloading. In Grillea v. United States, 232 F.2d 919 (2d Cir. 1956), the court held the owner liable for an injury to a longshoreman caused by his own or a fellow worker's negligence in improperly replacing a hatchcover, saying that liability existed "though he [the owner] may have no means of learning of, or correcting, the defect." 232 F.2d at 923. The court commented that "enough time had elapsed to result in unseaworthiness." Later cases, perhaps over-emphasizing the temporal aspect noted in this opinion, held that a shipowner was liable only if he or his agents were negligent in failing to detect and rectify the condition. An example is Mitchell v. Trawler Racer, Inc., 265 F.2d 426, 432 (1st Cir. 1959). However, this requirement of a lapse of time after the significant act in order to create liability was explicitly rejected by the Supreme Court in Mitchell v. Trawler Racer, Inc., 362 U.S. 539, 549–

550, 80 S.Ct. 926, 833, 4 L.Ed.2d 941 (1960). In the course of its opinion the Court stated: "[T]he shipowner's actual or constructive knowledge of the unseaworthy condition is not essential to his liability * * *. What has evolved is a complete divorcement of unseaworthiness liability from concepts of negligence." See Schell v. Chesapeake & Ohio Railway Co., 395 F.2d 676 (4th Cir. 1968); Grzybowski, etc. v. Arrow Barge Co., 283 F.2d 481 (4th Cir. 1960).

*Mitchell* answered affirmatively the question of whether a shipowner is responsible for an unseaworthy condition created by a member of the crew or a longshoreman working on board. For a time, however, some courts questioned whether operational negligence, standing alone, would support an injured seaman's or longshoreman's claim for damages under the doctrine of unseaworthiness. The lower federal courts valiantly attempted to draw a line between operational negligence and unseaworthiness, see Grillea v. United States, supra; Mitchell v. Trawler Racer, Inc., 265 F.2d 426 (1st Cir. 1959); Penedo Cia Naviera S. A. v. Maniatis, 262 F.2d 284 (4th Cir. 1959). While recognizing the distinction, our circuit observed in Scott v. Isbrandtsen Co., 327 F.2d 113, 124 (1964), that "[t]he obvious trend of the Supreme Court decisions is toward providing ever increasing protection for crewmen [or] longshoremen * * * who may be called upon to work aboard vessels."

Recently in Mascuilli v. United States, 387 U.S. 237, 87 S.Ct. 1705, 18 L.Ed.2d 743 (1967), the Court was squarely confronted with the necessity of deciding whether a vessel could be rendered unseaworthy solely by the longshoremen's negligent handling of otherwise proper equipment.

1. See The Osceola, 189 U.S. 158, 23 S.Ct. 483, 47 L.Ed. 760 (1903); Mahnich v. Southern S.S. Co., supra; Seas Shipping Co. v. Sieracki, 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099 (1946); Alaska Steamship Co. v. Petterson, 347 U.S. 396, 74 S.Ct. 601, 98 L.Ed. 798 (1954); Crumady v. The Joachim Hendrick Fisser, 358 U.S. 423, 79 S.Ct. 445, 3 L.Ed.2d 413 (1959); Mitchell v. Trawler Racer, Inc., supra; Waldron v. Moore-McCormack Lines, Inc., 386 U.S. 724, 87 S.Ct. 1410, 18 L.Ed.2d 482 (1967); Mascuilli v. United States, 387 U.S. 237, 87 S.Ct. 1705, 18 L.Ed.2d 743 (1967).

Mascuilli, a longshoreman, was engaged in the loading of army tanks aboard the U.S.N.S. Marine Fiddler, when one or more of his fellow longshoremen negligently permitted both the starboard and port vangs [2] on the loading boom simultaneously to become taut. This resulted in the sudden parting of the port shackle which in turn caused one of the vangs to recoil and fall to the after port deck, striking and killing Mascuilli. In the lower courts, his administratrix was denied recovery. First, the District Judge, sitting without a jury, gave judgment against her because he found that all the ship's appurtenances were "in a seaworthy condition at all times, and remained so throughout the entire loading operations. The accident was caused solely by the negligent operation of the stevedoring crew using seaworthy equipment in such a manner as to cause the accident to occur * * * instantaneously." 241 F.Supp. 354 at 362 (E.D. Pa.1965). On appeal, the Third Circuit adopted this reasoning and affirmed, 358 F.2d 133 (1966).

However, the Supreme Court, in apparent continuation of the trend recognized in Scott v. Isbrandtsen Co., supra, granted certiorari and summarily reversed the Third Circuit, merely citing Mahnich v. Southern S.S. Co., supra, and Crumady v. The Joachim Hendrick Fisser, 358 U.S. 423, 79 S.Ct. 445, 3 L.Ed.2d 413 (1959). The Court's brief pronouncement in Mascuilli has been considered and interpreted in two cases in the Second Circuit. We find ourselves in accord with that circuit's conclusion that Mascuilli must be read as rejecting operational negligence "as a factor in the determination of liability." Candiano v. Moore-McCormack Lines, Inc., 382 F.2d 961, 962 (2 Cir. 1967); Alexander v. Bethlehem Steel Corporation, 382 F.2d 963 (2d Cir. 1967).

We are unable to agree with the contention, advanced in the present case, that the Supreme Court cited Crumady and Mahnich merely because of supposed factual similarities. We are persuaded that the Court cited them to indicate its view that operational negligence alone may be sufficient to create an unseaworthy condition.[3] We take the view that the Mahnich and Crumady decisions were cited to emphasize the Supreme Court's deep concern, voiced in both opinions, for the welfare of seamen and longshoremen,[4] and to clarify the corresponding obligation of the shipowner.

It is now settled that the negligent misuse of safe and sufficient equipment renders a vessel unseaworthy. See Waldron v. Moore-McCormack Lines, Inc., 386 U.S. 724, 727, 87 S.Ct. 1410, 18 L.Ed.2d 482 (1967). Thus, operational negligence has been subsumed under the doctrine of unseaworthiness, and a trial court's instructions should no longer attempt to distinguish between the two.

---

2. Vangs are ropes that extend from the peak of a spar to steady it.

3. The claimed factual similarity is nonexistent. In Crumady and Mahnich the lower courts had found that the workers employed defective gear in the course of their duties—a defective rope in Mahnich and an improperly adjusted "cut-off" device in Crumady. The circuit courts in both cases concluded that this alone did not create unseaworthiness. In each instance, however, the Supreme Court, while accepting the factual findings, reversed on the ground that they sufficiently established unseaworthy conditions as a matter of law. In Mascuilli, on the other hand, the district judge specifically found (a) that all appurtenances were fit for their intended use, (b) that the winch cut-offs had "no application or bearing on the instant case," 241 F.Supp. at 363, and (c) that the accident resulted solely from the negligence of the longshoremen engaged in the loading of the vessel. We must assume that the Court accepted these findings, which, we think, serve to distinguish Mascuilli from the other two cases.

4. The Court might also have cited its decision in Waldron v. Moore-McCormack Lines, Inc., 386 U.S. at 726, 87 S.Ct. at 1411, where it stressed "the broad remedial purposes of the doctrine of unseaworthiness."

**352**

Alexander v. Bethlehem Steel Corporation, 382 F.2d 963, 965 (2d Cir. 1967).[5]

Venable next contends that the trial judge erred in charging that "[t]he mere fact that there was an empty space between some of the hogsheads of tobacco comprising the stowage on board the Oklahoma is not enough, standing alone and by itself, to constitute unseaworthiness."

■■ That it is the shipowner's duty to furnish all seamen and longshoremen a safe place to work and that this obligation extends to the stowage where men perform the loading and unloading operations are uniformly acknowledged. Mahnich v. Southern S.S. Co., supra, 321 U.S. at 102, 64 S.Ct. 455; Palazzolo v. Pan-Atlantic Steamship Corp., 211 F.2d 277 (2d Cir. 1954); Gindville v. American-Hawaiian Steamship Co., 224 F.2d 746 (3d Cir. 1955); Boleski v. American Export Lines, Inc., 385 F.2d 69 (4th Cir. 1967); Strachan Shipping Co. v. Alexander, 311 F.2d 385 (5th Cir. 1962). This duty, absolute and nondelegable, creates a "species of liability without fault * * *. Derived from and shaped to meet the hazards which performing the services imposes, the liability is neither limited by conceptions of negligence nor contractual in character * * *. It is a form of absolute duty owing to all within the range of its humanitarian policy." Seas Shipping Co. v. Sieracki, supra 328 U.S. at 94–95, 66 S.Ct. at 877, 90 L.Ed. 1099.

■■ The fact that spaces are necessarily present between the hogsheads and that longshoremen knowingly subject themselves to the hazard, are not mitigating factors. Recognizing that these men are constrained "to accept, without critical examination and without protest, working conditions and appliances as commanded by [their] superior officers," the Court has declared repeatedly that they are "not deemed to assume the risk of unseaworth[iness]." Mahnich v. Southern S.S. Co., 321 U.S. at 103, 64 S.Ct. at 459, 88 L.Ed. 561; Socony-Vacuum Oil Co. v. Smith, 305 U.S. 424, 59 S.Ct. 262, 83 L.Ed. 265 (1939).

■ Certainly the shipowner was cognizant of the fact that longshoremen

5. The obvious attempt to draw the distinction between operational negligence and unseaworthiness is not rectified by the later portion of the charge instructing that:

"If an unsafe condition existed on the vessel and if, in your opinion, such unsafe condition constituted unseaworthiness, no matter for how short a time, and if that unseaworthiness was created or did come into play by reason of the steverore or its longshoremen, then if you further believe that such unseaworthiness was a proximate cause of the plaintiff's injuries, the defendant is liable."

At best, the jury would be confused as to the proper standard to apply. Since the District Judge's opinion explicitly rejected the idea "that operating negligence, *standing alone*, is sufficient to support a recovery" (the District Court's emphasis), it is reasonable to infer that the charge was meant to be so interpreted. Indeed counsel for both sides construed the charge in this manner.

Without citation of a single case or acknowledgement of the trend of recent Supreme Court decisions, our dissenting Brother posits the hypothetical of a seaman or longshoreman being injured by a wrench negligently dropped by a fellow worker. Although we think that our opinion is not to be read so broadly as to encompass all injuries, we again refer to the Supreme Court's extension of the protection afforded by the unseaworthiness doctrine to injuries sustained as a result of a longshoreman's or seaman's negligent misuse of safe equipment in the course of maritime operations. Mascuilli v. United States, supra; Waldron v. Moore-McCormack Lines, Inc., supra. Cognizant of the clear development of the unseaworthiness doctrine, the Second Circuit recently observed:

"Although there is no basis in logic for attributing unseaworthiness to a vessel which is in every respect soundly constructed and completely equipped merely because of the negligence of longshoremen or crew members engaged in an operation on board, the term has been created by judicial fiat and used for all practical purposes for imposing absolute liability on shipowner and stevedore." Candiano v. Moore-McCormack Lines, Inc., 382 F. 2d 961, 962 (2 Cir. 1967).

would be forced, during loading and unloading operations, to work on the stowed hogsheads. It therefore became his absolute duty to make the surface safe for that type of work. Longshoremen called to testify in plaintiff's behalf were unanimous in stating that they would have used dunnage had it been available, since it would have made their working surface safer. While the defendant's testimony was that it was not the industry practice to use dunnage in this particular type of stowage, this is no sufficient answer. As we have had occasion to comment before, "[w]e fail to perceive any logical reason why trade customs should be permitted to form the legal standard of seaworthiness in actions under maritime law." Bryant v. Partenreederei-Ernest Russ, 330 F.2d 185, 189 (4th Cir. 1964). The duty of the shipowner is to assure a reasonably safe ship for all who work on board. This obligation is not satisfied by a showing that he has exercised reasonable care or due diligence, see *Sieracki,* supra 328 U.S. at 104, 66 S.Ct. 872; *Mahnich,* supra 321 U.S. at 100, 64 S.Ct. 455, or that he has complied with industry practice which may be guided by economy in disregard of the men's safety. See *Bryant,* supra. He must satisfy the trier of fact that his ship was safe. We must never permit the safety of the men to be subordinated to the perpetuation of industry practices, if these fall short of the law's strict requirements.

 The question for the jury is simply whether the stowage on the Oklahoma was safe for its intended use as a working surface for men engaged in the loading or unloading of heavy hogsheads. Certainly the spaces *may* present a hazard to the longshoremen and thus constitute an unseaworthy condition. See Alexander v. Meiji Kaiun K. K., 195 F.Supp. 831 (E.D.La. 1961); aff'd sub nom. Strachan Shipping Co. v. Alexander, 311 F.2d 385 (5th Cir. 1962). Compare Nuzzo v. Rederi, 304 F.2d 506

(2d Cir. 1962). To instruct otherwise, tends to mislead the jury by diffusing the proper focus of its attention.

 Relying on this circuit's recent opinion in Sanderlin v. Martin, 373 F.2d 447 (1967), appellant also objects to the trial court's instructing the jury that "the defendant shipowner is presumed in law to have been free from negligence and the Oklahoma is presumed in law to have been seaworthy until the contrary appears from the evidence." In *Sanderlin* we observed, "since both parties had offered evidence, the issue of negligence [or unseaworthiness] was for [the jury's] determination without the added weight of any presumption." 373 F.2d at 449. This principle operates with equal force in the instant case.

 Finally, plaintiff contends that the trial court erred in refusing to grant his motion for a directed verdict. The motion was premised on the Longshoring Safety Regulations which explicitly provide that "[a]ll walking and working areas shall be adequately illuminated," 29 C.F.R. 1504.92(a), and further, that "[t]he term 'shall' indicates provisions which are mandatory." Appellant insists that the absence of artificial lighting plus the uniform testimony that the light in the area where the accident occurred was generally poor, constituted a breach of the safety regulation and rendered the vessel unseaworthy as a matter of law. Contrary to plaintiff's protestations, however, we think he is not entitled, on this record, to a directed verdict in his favor. On retrial, appellant is entitled to have these regulations placed before the jury with an accompanying instruction consistent with this court's holding in Provenza v. American Export Lines, Inc., 324 F.2d 660, 665 (1965), that their "violation would render the ship unseaworthy, and if such unseaworthiness was the proximate cause of the plaintiff's injury, it would also render the defendant shipowner liable." See Kernan v. American

Dredging Co., 355 U.S. 426, 78 S.Ct. 394, 2 L.E.2d 382 (1958).[6]

Finding merit in Venable's objection to the trial court's instructions, we conclude that he is entitled to a new trial.

We need not deal with the second major contention that the jury selection procedure employed at the time of his trial in the Eastern District of Virginia, Norfolk Division, failed to measure up to the constitutional standards recently enunciated by the Supreme Court in Whitus v. State of Georgia, 385 U.S. 545, 87 S.Ct. 643, 17 L.Ed.2d 599 (1967), inasmuch as it presented the opportunity for systematic exclusion of Negroes. Subsequent to the argument of the appeal, the President, on March 27, 1968, signed into law the Jury Selection Act (90th Cong.S. 989) which prescribes for the federal courts a selection procedure free from the alleged defects of which appellant complains. Although the Act will not become effective for 270 days after its signing, it appears that the Eastern District of Virginia has already adopted a plan designed to comply with the new statutory requirements, and has abandoned the categorization of prospective jurors by race and sex. In light of this, there is no reason to anticipate any objection to the manner of jury selection on remand.

Appellant raises a number of other questions, but we deem it unnecessary to comment on them for they too are not likely to recur on retrial of the case.

Reversed and remanded.

ALBERT V. BRYAN, Circuit Judge, (dissenting):

I would affirm. Aware of the doctrine of operational negligence, the District Judge applied it quite precisely, I think.

This court now reverses because, it finds, his jury instructions embodied an erroneous submission of the doctrine. The majority holds, with which I disagree, that under the doctrine, negligence of a longshoreman without more amounts to unseaworthiness. My second difference is that in any event the two statements in the instructions singled out as crossing the majority, were harmless, in the light of the unexceptionable comprehensiveness of the charge in respect to negligence and unseaworthiness.

My understanding is that the rule does not equate negligence with unseaworthiness. The two remain separate elements. One is cause, the other effect, and together they create a basis of liability beyond a claim on negligence alone, i. e. a cause of action for unseaworthiness. Hence, the negligence of the longshoreman while actionable qua negligence, is not actionable as unseaworthiness unless it has caused unseaworthiness. Illustrations of the distinctiveness between the two are not wanting. For example, if a longshoreman in walking past another on deck negligently dropped a wrench upon the latter's foot, the injured man would not have a cause of action on unseaworthiness, for no such condition resulted. Other instances come readily to mind. All demonstrate that negligence does not by itself constitute unseaworthiness.[1] This concept of the independence of these two elements was carried by the District Judge into the instructions here, and quite correctly I think. Nevertheless, this is the point of the reversal.

The first of the instructions, and the part to which the majority takes exception, declares that if "the accident was the result of the manner in which the

---

6. We are advertant to the further statement in *Provenza* that "the regulation may be shown just like any other evidence to indicate that a certain practice is safe or unsafe. While such evidence is not conclusive, it is revelant." We do not subscribe to this narrow role of the regulation. In this respect we agree with the District Judge who correctly charged

that the Regulation promulgated by the Secretary of Labor is binding law and that if the Regulation was violated with resulting injury, the plaintiff is entitled to recovery.

1. The demonstration is too evident to need citation of authority, and too plain to be overridden by a decisional trend.

plaintiff and his fellow longshoremen perform their duties on board * * * and * * * this was the efficient cause of the accident to the entire exclusion of any negligence of the defendant or any unseaworthiness of the vessel", there would be no liability on the ship-owner. This sentence does not run counter to the principle of operational negligence.

The pith of that principle here is that if at anytime—before, during or after the voyage—the negligence of the ship-owner or of a longshoreman causes unseaworthiness in the vessel, the owner is liable on the score of unseaworthiness to another longshoreman injured thereby. But for its invocation there must in fact be negligence imputable to the defendant or independent unseaworthiness. If there is none, then, as the District Judge charged, there would be no basis under the theory of operational negligence for unseaworthiness-liability. Hence, the instruction was accurate in excluding responsibility if there was no unsea-worthiness or negligence of the defend-ant.

The majority is mistaken in framing the District Judge's concept of operation-al negligence. He stressed that negli-gence of the owner or of another long-shoreman requires finding of liability *if the negligence resulted in unseaworthi-ness*. If it did not, that is if the negli-gence stood alone, then there was no liability on the basis of unseaworthiness. Throughout the charge the trial judge made this distinction quite clearly. The part of his opinion which, of course, never went to the jury, now cited by this court to reveal the judge's intendment of his words is incomplete. He did not make the naked assertion that operation-al negligence, standing alone, does not permit a recovery. Always he condi-tioned this holding on the absence of un-seaworthiness due to negligence.

Likewise, I perceive nothing incorrect in the other instruction, also now held to demand reversal, that "the mere fact that there was an empty space between *some* of the hogsheads * * * com-prising the stowage * * * is not enough, standing alone and by itself, to constitute unseaworthiness". Surely this is sound, in fact and in law. "Some" of these containers could well be spaced apart without conclusively establishing negligence. To me this is a truism. The jury was entitled to know that this cir-cumstance did not peremptorily com-mand a finding of unseaworthiness. Other contextual conditions could, of course, make it actionable, but these had to be added to create liability.

The immediate defect found in the two instructions was that they submitted factual premises which were not in issue, e. g., (1) exclusivity of causal fault on the plaintiff's part and (2) reference to the spacing of "some" hogsheads instead of just to those around the plaintiff. Granting the asserted infirmity arguen-do, I fail to grasp the gravity of either of these allusions. They were merely prefatory statements, conventionally given as the beginning point for the jury's determination of negligence and unseaworthiness. In both instances, they were followed with a meticulous, step by step, enlargement upon every accusation made by the plaintiff. The charge de-fined unseaworthiness generally, then applied it specifically to each accusation, and advised the jury of the unqualified liability for any breach. The irrelevance of the owner's participation or knowl-edge, and of the time at which it arose, was emphasized.

I think the majority strains for error.

## ON PETITION FOR REHEARING EN BANC

PER CURIAM.

Appellee's Petition misconceives this court's holding. We adhere to the view that operational negligence may cause unseaworthiness, but do not intimate that every instance of operational negligence necessarily creates liability under the un-seaworthiness doctrine. The defect in the charge of the District Court, which required reversal, is that it ruled out the

possibility of a finding that the manner in which the longshoremen performed their duties resulted in an unseaworthy condition.

Rehearing denied.