Victor **MENDOZA**, Plaintiff,

v.

**A/S J. LUDWIG MOWINCKELS RE-DERI,** Defendant and Third-Party Plaintiff,

v.

**UNIVERSAL TERMINAL & STEVEDOR-ING CORP.,** Third-Party Defendant.

**No. 65 Civ. 485.**

United States District Court
S. D. New York.

Dec. 26, 1968.

Sheldon Tabak, New York City, for plaintiff.

Haight, Gardner, Poor & Havens, for defendant and third-party plaintiff, by Marzik, New York City, of counsel.

Brown, Quencer & Commette, by Albert S. Commette, New York City, for third party defendant.

## OPINION

EDELSTEIN, District Judge.

This action arose out of an injury suffered by Victor Mendoza, a thirty-eight year old longshoreman, on August 19, 1964, on board the S.S. LISTA. Defendant, A/S J. Ludwig Mowinckels Rederi, was the owner of the vessel and third party defendant, Universal Terminal & Stevedoring Corp., was the stevedore discharging the vessel and was also Mendoza's employer. This court has jurisdiction over the matter in controversy under 28 U.S.C. § 1333.

By the preponderance of the credible evidence in this case, the court is able to reconstruct the relevant events leading up to the accident:

Plaintiff began work at 8:00 a. m. on August 19, 1964, on board the S.S. LISTA. He began work with his regular gang on the tween deck of the number three hatch. After completing their work on the tween deck, plaintiff and his gang descended into the lower hold. The cargo to be immediately discharged from the lower hold consisted of unboxed automobiles which stood on a dunnage floor which was laid over general cargo. The dunnage floor was irregular and uneven and not nailed together. It consisted of two layers, one running fore and aft and the other running athwartship. One of the automobiles to be unloaded stood with its front wheels in a hole in the dunnage floor. Mendoza, with five or six members of his gang, attempted to lift the automobile out of the hole. He stood in front of the wheel on the driver's side of the automobile on some sacks of cargo below the level of the dunnage floor, with his hands on the bumper of the automobile. Mendoza and his gang failed to move the automobile and then a longshoreman entered the automobile. Mendoza and his gang pushed and the longshoreman in the automobile started it in reverse. The spinning rear wheels kicked a piece of dunnage out from under the automobile and it struck Mendoza on the right knee.

The longshoremen received the keys to the automobiles from their hatch boss, Oscar Allen, who was present in the lower hold during the discharging operation. Allen received the keys from a crew member who was also present at the hatch during the discharging operation.

 The S.S. LISTA was unseaworthy in respect to Victor Mendoza. A shipowner's warranty of seaworthiness runs in favor of one who is performing the ship's service. Seas Shipping Co., v. Sieracki, 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099 (1946). Victor Mendoza,

a longshoreman, was performing the ship's service and was thus entitled to a seaworthy vessel. The third party defendant was guilty of operational negligence when its longshoreman drove an automobile on unsecured dunnage boards. The spinning of the motor driven wheels might easily kick out a loose piece of dunnage which could cause injury—precisely what happened to Victor Mendoza. Although there was testimony during the trial that it is not unusual for longshoremen to drive automobiles over unsecured dunnage floors, such testimony does not establish that this procedure is proper. See Texas & Pac. Ry. v. Behymer, 189 U.S. 468, 470, 23 S.Ct. 622, 47 L.Ed. 905 (1903). The operational negligence of a stevedore can render a vessel *pro tanto* unseaworthy, Candiano v. Moore-McCormack Lines, Inc., 382 F.2d 961, rehearing denied, 386 F.2d 444 (2d Cir. 1967), cert. denied, 390 U.S. 1027, 88 S.Ct. 1416, 20 L.Ed.2d 284, April 22, 1968; Alexander v. Bethlehem Steel Corp., 382 F.2d 963 (2d Cir. 1967), and in this case the operational negligence did so render the S.S. LISTA unseaworthy.

 Defendant was also guilty of negligence. A ship owner owes a business guest or other invited person a safe place to work. United New York & New Jersey Sandy Hook Pilots Assn. v. Halecki, 358 U.S. 613, 79 S.Ct. 517, 3 L.Ed.2d 541 (1959); The M/V TUNGUS v. Skovgaard, 358 U.S. 588, 79 S.Ct. 503, 3 L.Ed.2d 524 (1959); Connolly v. Weyerhaeuser Steamship Co., 236 F.2d 848 (2d Cir. 1956), rev'd on other ground sub nom. Weyerhaeuser Steamship Co. v. Nacirema Operating Co., 355 U.S. 563, 78 S.Ct. 438, 2 L.Ed.2d 491 (1958). Defendant breached its duty to Mendoza, who as a longshoreman fell within a protected class, when it allowed a longshoreman to drive an automobile on an unsecured dunnage floor when it had actual knowledge of this state of affairs through the crew member present at the number three hatch.

 The driving of an automobile by a longshoreman on an unsecured floor for which defendant is accountable both in negligence and unseaworthiness was the proximate cause of Mendoza's injury. The spinning of the motor driven wheels caused a piece of dunnage to kick out from under the automobile and Mendoza was struck.

 Both defendant and third party defendant have maintained that Victor Mendoza was guilty of contributory negligence. The burden of showing that he was guilty of contributory negligence is on defendant and third party defendant. Gypsum Carrier, Inc. v. Handelsman, 307 F.2d 525, 528, 4 A.L.R. 3d 517 (9th Cir. 1962); United States v. Smith, 220 F.2d 548, 554 (5th Cir. 1955); 2 Norris Seamen § 684 at p. 847 (1962). The preponderance of the credible evidence fails to establish that Victor Mendoza, who was performing the task assigned to him under the direction of his hatch boss, was guilty of contributory negligence.

The piece of dunnage that kicked out and struck Victor Mendoza in the knee caused him to fall over backwards. Although in pain, he continued working for the remainder of the day and worked again the following day, August 20, 1964. The knee became increasingly swollen and disabling and, therefore, plaintiff attempted to seek medical care from the doctor recommended by the stevedore. Unable to locate this physician, plaintiff sought no further medical care until the evening of August 22, 1964, when he went to St. Vincent's Hospital for emergency care necessitated by the restricted motion and pain in the right knee. The plaintiff was given an Ace bandage and crutches to assist in ambulating.

On August 24, 1964, the plaintiff visited the stevedore's medical consultant who prepared the attending physician's report which stated that there was a marked swelling of the supra and infra patella bursae of the right knee with

marked inflammation, exquisite tenderness and inability to flex the knee joint. Mendoza was put under treatment with physical therapy, medication and a knee support. On August 26, 1964, approximately one hundred and forty cc's of bursa fluid was removed.

Mendoza remained under treatment but the pain and swelling persisted and on August 31, 1964, he again went to St. Vincent's Hospital where he was admitted. Mendoza was treated with bed rest and medication to reduce the swelling and was discharged, improved, on September 15, 1964.

On September 30, 1964, Mendoza was examined by a Dr. Joseph F. Giattini, and this physician noted an acute swelling of the right knee joint. A diagnosis of tear of the lateral meniscus was made and it was recommended that plaintiff have surgery in the form of an arthrotomy of the right knee. For the purpose of surgery Mendoza was referred to Dr. Anthony J. Pisani.

Dr. Pisani examined the patient on October 21, 1964, and reported soft tissue swelling and evidence of effusion in the knee. He found pain on motion and tenderness over the medial meniscus. X-rays showed some narrowing of the medial joint space with minimal degree of arthritic change. The doctor felt that there was a chronic underlying condition of gout, with a superimposed injury to the right knee resulting in injury to the medial meniscus. He recommended arthrotomy of the knee for excision of the torn meniscus. On December 15, 1964, Mendoza was admitted to St. Vincent's Hospital and on the following day the operation was performed; the torn medial meniscus was removed. Mendoza was discharged for convalescence on December 24, 1964.

On February 2, 1965, Dr. Pisani found moderate effusion in the right knee, some increased heat over the knee joint and a lack of thirty degrees of complete flexion. Interval reports describe continued swelling of the knee joint and indicate that physiotherapy was given together with frequent aspirations to the knee joint. He was also given whirlpool treatments. Mendoza also received periodic hydrocortisone injections directly into the knee.

Mendoza continued under treatment and was seen by another stevedore physician, Dr. Mario Stella, an orthopedic consultant, on July 27, 1965. Dr. Stella's opinion was that plaintiff would require further surgery which should include an exploratory operation of the right knee and a synovectomy. Thus a second operation was performed on August 18, 1965, by Dr. Pisani. Plaintiff was discharged to the outpatient department on September 1, 1965, and continued under the care of Dr. Pisani.

Mendoza was referred for further examination to Dr. Carlo Sorell in November 1967. Dr. Sorell evaluated plaintiff's condition on a number of occasions and was the only physician to testify at trial. Dr. Sorell found that Mendoza is definitely in need of a third operation for the removal of the degenerated portion of the right patella. Neither the defendant and third party plaintiff, nor the third party defendant contest the necessity and desirability for such a third operation.

Dr. Sorell also expressed the opinion that if the third operation recommended by him was not successful in reducing or eliminating the pain in plaintiff's right knee, then the desirability of an athrodesis of the right knee would have to be considered, the result of such a fourth operation being either elimination of all possible movement or bending of the right knee joint, which would leave the plaintiff with a completely rigid knee.

Mr. Mendoza faces a very bleak future indeed. He has undergone two operations and will have to undergo a third and possibly a fourth operation in the future. He has suffered and experienced pain and will continue to suffer pain all the days of his life. He has been forced to walk with either the aid of crutches or a cane, and will have to use some type of knee support for the remainder of his life. Plaintiff suffers from a per-

manent total disability, preventing him from engaging in the only occupation he has known, that of longshoring. In addition Mendoza will never again be able to indulge in his favorite leisure time activities of playing in the park with his children, engaging in outdoor physical activities, and dancing with his wife.

The preponderance of the credible evidence impels the conclusion that the accident of August 19, 1964, was the competent producing cause of the injury to plaintiff's knee, and of the consequences described supra.

The preponderance of the credible evidence further impels the conclusion that plaintiff has lost earnings of $20,900.00. The plaintiff is entitled to an award of $86,907.90 for the present discounted value of his future loss of earnings. It has been stipulated by counsel that plaintiff's medical and hospital expenses amount to $3,325.31. It has also been stipulated by counsel that at the time of trial plaintiff had a life expectancy of 27.7 years. Damages for past, present, and future pain and suffering are assessed at $175,000.00.

Defendant maintained that if it is held liable to plaintiff, it is entitled to indemnity from third party defendant. Defendant introduced its contract with third party defendant in evidence. In this contract, dated March 1, 1961, third party defendant promised to perform its stevedoring services in a proper and workmanlike manner. Even had there been no express contract between defendant, and third party defendant, the law would imply an agreement whereby third party defendant would warranty workmanlike service to defendant. The third party defendant did not render workmanlike service when its employee drove an automobile on an unsecured dunnage floor. When a stevedore not only knows of a dangerous state of affairs but actually creates that state of affairs, it will be held accountable. See Albanese v. N. V. Nederl. Amerik. Stoomv. Maats, 392 F.2d 763, Second Circuit, April 12, 1968. The doctrine of Weyerhaeuser S. S. Co. v. Nacirema Operating Co., Inc., 355 U.S. 563, 78 S.Ct. 438, 2 L.Ed.2d 491 (1958) is not applicable to the case at bar. Defendant was not guilty of conduct sufficient to preclude indemnity since it in no way interfered with third party defendant's supervision and direction of its personnel under third party defendant's warranty of workmanlike service. See Giaraffa v. Moore-McCormack Lines, Inc., 270 F. Supp. 342, 350 (S.D.N.Y.1967). Although the hole in the dunnage floor was not of the stevedore's making, there were reasonable alternatives available to it in discharging its unloading responsibilities in a safe and workmanlike manner. The vessel did nothing to interfere with the stevedore's performance of its task. Although indemnity includes the reasonable value of counsel fees, Norris Maritime Personal Injuries § 61 (1959), counsel for defendant and third party defendant have stipulated that they will settle this matter without an award by the court. If counsel cannot settle this matter between themselves, the court, upon application for a hearing, will hold a hearing to determine this amount.

It is the judgment of this court that Victor Mendoza recover from A/S J. Ludwig Mowinckels Rederi the sum of $286,133.21. A/S J. Ludwig Mowinckels Rederi is to be indemnified by Universal Terminal and Stevedoring Corp. in the same amount. A/S J. Ludwig Mowinckels Rederi is also to be indemnified for the reasonable value of its counsel's services.

The foregoing constitutes the required findings of fact and conclusions of law.

So ordered.