**Walter LUNDY, Appellant,**

v.

**ISTHMIAN LINES, INC., Appellees.**

**No. 13492.**

United States Court of Appeals, Fourth Circuit.

Argued Jan. 7, 1970.

Decided March 24, 1970.

C. Arthur Rutter, Jr., Norfolk, Va. (Breit, Rutter, Cohen, Ermlich & Fried-

man, Norfolk, Va., on the brief), for appellant.

Walter B. Martin, Jr., Norfolk, Va., (Vandeventer, Black, Meredith & Martin, Norfolk, Va., on the brief), for appellee.

Before BOREMAN, WINTER, and BUTZNER, Circuit Judges.

BUTZNER, Circuit Judge:

Walter Lundy, a longshoreman injured while unloading cargo, appeals from a jury verdict for the defendant shipowner. Lundy's principal claim is that the ship was unseaworthy as a matter of law. The district judge, however, denied his motion for a directed verdict and instead submitted the issue of unseaworthiness to the jury. Believing the submission was correct, we affirm.

At the time Lundy was injured, two gangs of longshoremen were discharging a cargo of canned goods from the number 4 hold, lower 'tween deck. Each gang consisted of eight longshoremen and a towmotor operator. The towmotors, or fork lifts, brought the cargo on pallets to the square of the hatch where it could be lifted from the hold by the ship's booms. Both gangs used the same hatch. Lundy's gang worked the offshore side of the ship and discharged from the forward end of the hatch, and the other gang worked the inshore side using the after end of the hatch. It was necessary for the towmotors to drive forward to pick up the canned goods in the after end of the hold and then travel in reverse to the square of the hatch.

The hatch that opened to lower decks had a wooden cover on it. To enable the towmotors to drive over the hatch cover without breaking through, the longshoremen placed steel plates or "shoes" over the cover. Lundy was moving one of the shoes for the towmotor assigned to his gang when the driver of the other gang's towmotor, without looking behind him, backed his machine over Lundy's foot.

Lundy does not claim that the towmotor was defective or that the cargo was improperly stowed. He charges that the crowded conditions caused by two gangs working at the same hatch, the necessity for the towmotor to approach the square of the hatch in reverse, and the failure of the towmotor operator to look behind him created a dangerous place to work and rendered the ship unseaworthy. He raises the point by two assignments of error: first, the denial of his motion for a directed verdict; and second, the refusal of the trial judge to instruct the jury that they should find for him if a longshoreman caused the accident by negligently using the towmotor.

Scott v. Isbrandtsen Co., 327 F. 2d 113, 127 (4th Cir. 1964), recognizes that operational negligence of a longshoreman can make a shipowner liable to an injured longshoreman. There we held that negligence of longshoremen may create an unseaworthy condition for which the shipowner may be liable even though the condition be transitory and unknown to the ship's officers. 327 F.2d at 125. And in Venable v. A/S Det Forenede Dampskibsselskab, 399 F.2d 347 (4th Cir. 1968), we affirmed this position, relying on Mascuilli v. United States, 387 U.S. 237, 87 S.Ct. 1705, 18 L.Ed.2d 743 (1967).*

---

\* *Mascuilli*, a cryptic per curiam opinion, has received varying interpretations. The Second, Third, and Fourth Circuits have held that a single act of instantaneous negligence by a longshoreman using safe and proper equipment can render the ship unseaworthy. Candiano v. Moore-McCormack Lines, Inc., 382 F.2d 961 (2d Cir. 1967), cert. denied, 390 U.S. 1027, 88 S.Ct. 1416, 20 L.Ed.2d 284 (1968); Alexander v. Bethlehem Steel Corp., 382 F.2d 963 (2d Cir. 1967), cert. denied, International Terminal Operating Co. v. Alexander, 393 U.S. 1064, 89 S.Ct. 717, 21 L.Ed.2d 707 (1969); Mascuilli v. United States, 411 F.2d 867 (3rd Cir. 1969); Venable v. A/S Det Forenede Dampskibsselskab, 399 F.2d 347 (4th Cir. 1968). The Fifth and Ninth Circuits, however, reject this theory of "instant unseaworthiness." Luckenbach Overseas Corp. v. Usner, 413 F.2d 984 (5th Cir. 1969), cert. granted, 396 U.S. 940, 90 S.Ct. 940, 25 L.Ed.2d 114 (1970); Tim v. American President Lines, Ltd., 409 F.2d 385 (9th Cir. 1969).

However, our decisions do not require a finding of unseaworthiness as a matter of law from every negligent act or omission of a longshoreman that injures a fellow worker. While the duty of the owner to furnish a seaworthy ship is absolute, "it is a duty only to furnish a vessel and appurtenances reasonably fit for their intended use. The standard is not perfection, but reasonable fitness * * *." Mitchell v. Trawler Racer, 362 U.S. 539, 550, 80 S.Ct. 926, 933, 4 L.Ed.2d 941 (1960). Thus, if fair-minded men, viewing all the facts and the inferences that may be drawn from the facts, can differ over whether the ship and its gear are reasonably fit for service, the issue of unseaworthiness must be submitted to the jury. See e. g., Venable v. A/S Det Forenede Dampskibsselskab, 399 F.2d 347 (4th Cir. 1968); Satchell v. Svenska Ostasiatiska Kompaniet, 385 F.2d 76 (4th Cir. 1967); Scott v. Isbrandtsen, 327 F.2d 113 (4th Cir. 1964).

The evidence does not disclose that operating towmotors in reverse was unusual or improper, but there was conflicting testimony about the propriety of using two gangs and two towmotors at one hatch. A witness called by Lundy said it was unusual and unsafe; a witness for the shipowner said discharge of cargo in this manner was normal. The only witness who saw the manner in which the towmotor was operated testified:

> "[Lundy] was sliding the shoe over. He had his back to the towmotor that the other gang was using and the towmotor driver wasn't looking back when he was backing up, and he backed into Lundy's feet and by—before I could holler 'Look out,' he had done backed over Lundy's feet and Lundy was—went down. He knocked the sole off and the heel off his shoe."

Lundy neither saw nor heard the towmotor before he was struck, and the towmotor operator did not testify. The evidence fails to disclose any information about the care, or lack of it, exercised by the driver other than that he was not looking back just before he struck Lundy. Considering all these circumstances, we believe fair-minded men can differ over whether the ship and its gear were "reasonably fit for their intended use." Mitchell v. Trawler Racer, 362 U.S. 539, 550, 80 S.Ct. 926, 933, 4 L.Ed.2d 941 (1960). Therefore, the issue of unseaworthiness was properly submitted to the jury. Cf. Lavender v. Kurn, 327 U.S. 645, 653, 66 S.Ct. 740, 90 L.Ed. 916 (1946).

We find no manifest error in the other portions of the charge about which Lundy complains.

Affirmed.

WINTER, Circuit Judge (dissenting):

On this record the towmotor operation was unquestionably negligent. As the majority recognizes, the uncontradicted evidence was that while working in a restricted area where he knew that other persons were present and occupied, the towmotor operator without looking behind him backed his vehicle over Lundy's foot. On these facts there was no jury issue as to operational negligence. The only conclusion which could be reached was that the towmotor operator exhibited total lack of care by blind disregard of others.

The majority states that "our decisions do not require a finding of unseaworthiness as a matter of law from every negligent act or omission of a longshoreman." The underpinning for the statement is purportedly the per curiam opinion denying rehearing in Venable and the language in Scott. Even if the correctness of the statement is assumed abstractly, this is not the rare or unusual case to which the statement is pertinent. For who can maintain that in these circumstances a towmotor operated without lookout was reasonably fit for its intended use? The majority is eloquently silent as to the circumstances from which the jury could so conclude. Because, in my view, this is not an issue on which fair-minded men could differ, I

would conclude that transitory unseaworthiness did result as a matter of law and the district judge should have directed a verdict for Lundy.