**Daniel CLEARY, Libellant,**

v.

**UNITED STATES LINES COM-
PANY, Respondent,**

v.

**T. HOGAN & SONS, INC., Respondent-
Impleaded.**

**No. 64 AD 828.**

United States District Court
S. D. New York.

Nov. 15, 1967.

Sylvia Miller, New York City, for libellant; Chester A. Hahn, New York City, of counsel.

Kirlin, Campbell & Keating, New York City, for respondent U. S. Lines; Daniel J. Dougherty, New York City, of counsel.

Bleakley, Platt, Schmidt, Hart & Fritz, New York City, for respondent-impleaded T. Hogan & Sons, Inc.; Frank A. Fritz, Michael J. Shalley, New York City, of counsel.

## MEMORANDUM

COOPER, District Judge.

Libellant longshoreman brings this action to recover damages for personal injuries sustained by him on October 7, 1963, resulting from the alleged unseaworthiness and negligence of the S.S. Pioneer Myth.

Respondent United States Lines Company, Inc. (hereinafter U.S. Lines), the owner and operator of the vessel on the day in question, has impleaded stevedore T. Hogan & Sons, Inc. (hereinafter Hogan), libellant's employer, seeking full indemnity by way of claim over.

By agreement of the parties at trial, proof as to damages was not presented; it was held in abeyance and made dependent upon the outcome of the issue of liability.

On October 7, 1963, libellant was engaged by Hogan in the operation of a hilo machine to aid in the stowing of cargo in the lower hold of #6 hatch. The hatch was divided by a wooden fence, which ran athwartship across the center of the hold (Tr. 45). Libellant was working in the forward part of the hatch (Tr. 14).

Between 6:30 and 7:00 P.M. on the day of the injury, an uncrated bundle of four automobile chassis, bound together by steel strapping, was lowered by the up-and-down boom into the hold of #6 hatch (Tr. 21–22, 71). The chassis were stored on their sides against the fence so that the rear portion of the bundle extended into the starboard wing with the narrower front ends of the chassis in the square of the hatch (Tr. 26–27, 58). After the chassis were so stowed, libellant parked his hilo machine in the square and stood in the starboard wing —to the side of the hilo machine and in front of the chassis (Tr. 29–32). The forward part of the hatch was filled with cargo. Accordingly, while the next draft was lowered, claimant stood in the only available position of safety (Tr. 79).

This next draft consisted of three cases, the two largest of which were estimated to measure either six by ten feet (Tr. 31) or eight by ten (Tr. 53). These cases were lowered by Weadock, Hogan's up-and-down winchman (Tr. 42). As the draft descended, the edge of the cases struck the chassis and knocked them over, pinning libellant beneath them (Tr. 80).

Libellant's claim that U.S. Lines was negligent was not pursued at trial; no testimony was elicited which would support a conclusion that U.S. Lines breached its duty of care to libellant. Accordingly, the claim based on negligence is dismissed.

We hold, however, that unseaworthiness of the Pioneer Myth was clearly established, and that respondent is entitled to indemnity from Hogan.

■■ It is well settled that the warranty of a seaworthy vessel, i.e. a ship that is reasonably fit for its intended service, extends to longshoremen as well as to crewmen. Seas Shipping Co., Inc. v. Sieracki, 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099 (1946). Also, since the Court of Appeals for the Second Circuit decided Alexander v. Bethlehem Steel Corp., 2 Cir., 382 F.2d 963 (Aug. 1, 1967) and Candiano v. Moore-McCormack Lines, Inc., 2 Cir., 382 F.2d 961 (Aug. 1, 1967), interpreting the Supreme Court's decision in Mascuilli v. United States, 387 U.S. 237, 87 S.Ct. 1705, 18 L.Ed.2d 743 (1967), it is clear that a ship is rendered unseaworthy when longshoremen make negligent use of seaworthy equipment. Prior to these decisions, this circuit followed a distinction laid down in Grillea v. United States, 232 F.2d 919 (2d Cir.1956), to the effect that only if the negligent act had come to rest, thus giving rise to a condition of unseaworthiness, could a libellant sustain his cause of action. If the injury was caused by the operational negligence of the longshoreman, however, the vessel was not unseaworthy.

Although respondent-impleaded doubts whether the Supreme Court intended, in its summary disposition of Mascuilli, supra, to obliterate the distinction between operational negligence and unseaworthiness, the ultimate resolution of that issue poses no problem in the instant case. Our Circuit has clearly spoken on that score in the Alexander and Candiano cases, supra. Even without the decisions in Mascuilli, Alexander and Candiano, libellant has proved the existence of

an unseaworthy condition aboard the Pioneer Myth, at the time of the injury, such as would render respondent liable under pre-*Mascuilli* law.

Libellant's contention that the crowded condition of the lower hold at the time of the accident and the method of stowage of the chassis created an unseaworthy condition is without merit. Libellant, in effect, conceded at trial that the crowded condition of the hold did not amount to unseaworthiness, but rather went to the negation of contributory negligence on the part of libellant. Since no evidence was adduced that libellant was negligent in any respect, there is not before us the issue of contributory fault.

As to the stowage of the chassis, there was conflicting testimony regarding the measurement of the base upon which they rested. While it is clear that the bundle was approximately twenty-five to thirty feet long and four to four and one-half feet high at its back end, the estimates of the width of the base varied from two to four feet (Tr. 24–25, 37, 46, 48–49, 70). Even assuming that the base was two feet wide, however, and granting that the narrower front ends of the four chassis were not touching the skin of the ship, this Court cannot hold that the method of stowage was improper. Though it is likely that flat stowage would have been more stable, this is not to say that the method actually employed was unsafe. Libellant presented no expert testimony as to custom and usage with respect thereto, and although the indications are quite strong that the chassis were stowed in an unstable manner, the trial record is not quite sufficient to warrant a finding of unseaworthiness on that fact issue.

Libellant has proved unseaworthiness, however, in the improper manner in which the up-and-down boom was spotted when it lowered the draft that eventually struck the chassis. The winchman, Weadock, testified that when he lowered the boom he had a clear view of the hold. He saw the chassis and he testified that he had enough room in the square to lower the cases without hitting the hilo machine (Tr. 51, 61, 67). The testimony also supports the view that Weadock had sufficient room below to lower the draft without striking any of the cargo previously stowed. Furthermore, there is uncontradicted testimony that the draft came in to the hold "pretty straight," without any swaying from side to side (Tr. 81–82, 91). Under these circumstances we are convinced that Weadock acted improperly. In complete control of the situation, he allowed the cases to hit the chassis causing libellant's injuries. From his vantage point, Weadock should have foreseen that the draft would hit the chassis, and that injury might result to those in the hold. We need no expert testimony on this fact issue. Under *Alexander* and *Candiano*, such negligence by a longshoreman renders the vessel unseaworthy.

Even under the pre-*Mascuilli* law enunciated by this circuit, there is ample proof that an unseaworthy condition existed at the time of the accident. In Radovich v. Cunard S. S. Co., 364 F.2d 149 (2d Cir.1966), longshoremen used a Burton fall rope, fixed in a single purchase, to unload small foreign cars. After an hour and a half, without re-rigging the gear, they attempted to unload a much heavier sedan. The rope parted and the car fell; the sustaining bridle struck and injured libellant. In reversing the district court's dismissal of the libel, the court pointed out that:

> * * * there is a difference between an unsafe plan of operation, which creates a dangerous condition from the beginning of its execution, and a faulty execution of a proper plan. In determining the 'act' of negligence, the trial court would have to decide whether use of the single-purchase to lift the 3,600 pound sedan was such a negligent plan which created the dangerous condition immediately upon its inception. 364 F.2d at 153.

While the court there believed that at the time the lifting of the sedan began an unseaworthy condition already exist-

ed, it indicated that the question was one of fact for the trial judge to determine. 364 F.2d at 153.

■ Similarly, in the instant case, at the moment that Weadock proceeded to lower the boom, having failed to respot it after lowering the bundle of chassis, a dangerous condition was created, and the injury to libellant was proximately caused by the resulting unseaworthiness. We find that the failure to respot the boom constituted an unsafe plan of operation which in turn created "a dangerous condition from the beginning of its execution."

· The conclusion that the Pioneer Myth was unseaworthy is supported by Reid v. Quebec Paper Sales & Transp. Co., 340 F.2d 34, 37 (2d Cir.1965), the pertinent observation from which is to the effect that "* * * every act of negligence, no matter how short-lived, creates an unsafe condition for those exposed to it."

Pre-*Mascuilli* learning, then, dictates the conclusion that libellant's injuries were proximately caused by the unseaworthiness of the Pioneer Myth. *Mascuilli* and the cases interpreting it unmistakably support this result.

■ Since the injuries to libellant were caused solely by the improper workmanship of the stevedore, Hogan breached its warranty to U.S. Lines of workmanlike stevedoring services. Ryan Stevedoring Co., Inc. v. Pan-Atlantic S. S. Corp., 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133 (1956). The indemnity claim, therefore, is sustained, and Hogan must reimburse U.S. Lines for whatever sums it pays to libellant.

On the issue of responsibility as between libellant and U.S. Lines and as between respondent and respondent-impleaded, the foregoing shall constitute this Court's Findings of Fact and Conclusions of Law as required by Rule 52, F.R.Civ.P.

As to damages, this Court will take testimony thereon at an early date to be announced.