**James ROBERTSON, Plaintiff,***

v.

**SANYO MARU, her engines, tackle, apparel and furniture, and Sawayama Kisen, K. K., Defendants,**

v.

**TEXLA STEVEDORING COMPANY, Third-Party Defendants.**

**No. 4950.**

United States District Court
E. D. Louisiana,
New Orleans Division.

April 1, 1969.

---

* Although this is a pre-1966 Admiralty case and the parties should be referred to as libelant, respondents, and third party respondents, in this opinion they are referred to as plaintiff, defendants and third party defendants in accordance with current practice.

John R. Martzell, New Orleans, La., for plaintiff.

Leon Sarpy, Paul A. Nalty, New Orleans, La., for defendants.

A. R. Christovich, Jr., New Orleans, La., for third-party defendants.

RUBIN, District Judge:

Theologians once debated how many angels might stand on the head of a pin. Metaphysicians trained in such a tradition may find it possible to rationalize the decisions dealing with the extent to which a shipowner is liable for injuries to longshoremen caused by unseaworthiness brought about by the acts of fellow longshoreman.[1] The analyst must consider the decision in *Sieracki*[2] that a longshoreman engaged in ship's work has a cause of action against the shipowner for unseaworthiness, as well as the decision in Crumady v. The Joachim Hendrik Fisser[3] that the unseaworthiness on which such a suit is predicated can result from the negligence of other longshoremen.

The shipowner's liability, in any event, is passed on to the stevedore under the *Ryan* doctrine by virtue of the stevedore's warranty to perform the contract in a workmanlike manner.[4] But the stevedore is insulated from damage suits instituted by its longshoremen-employees by the provisions of the Longshoremen's and Harbor Workers' Compensation Act ("LHWA"). The Act provides that the longshoreman's sole remedy against his employer, the stevedore, is a claim for compensation benefits.[5]

Thus, under the *Sieracki-Ryan-Crumady* triad, the stevedore becomes liable to the shipowner when one of its employees is injured as the result of unseaworthiness brought about by the negligence of its other employees. The liability is indirect, but it is nonetheless real. The stevedore's statutory immunity from tort claims by its own employees endures today only when a longshoreman is injured by the negligence of a fellow longshoreman that does not result in unseaworthiness; in that event sole relief to the injured longshoreman is against his employer under the LHWA.

Meanwhile, the current of decisions expanding the doctrine of unseaworthiness has carried us to the point where we know that it may be occasioned by an act of negligence,[6] that it may be transitory in nature,[7] and that it encompasses the failure to provide a reasonably safe place to work even when the hazardous

---

1. See Venable v. A/S Det Forenede Dampskibsselskab, 4 Cir. 1968, 399 F.2d 347; the cases cited at 1967–68, 14 Loyola L. Rev. 176 n. 16; La Capria v. Compagnie Maritime Belge, S.D.N.Y.1968, 286 F. Supp. 980; and Cleary v. United States Lines Company, S.D.N.Y.1967, 287 F. Supp. 601.

2. Seas Shipping Co. v. Sieracki, 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099 (1946).

3. 358 U.S. 423, 79 S.Ct. 445, 3 L.Ed.2d 413 (1959).

4. Ryan Stevedoring Co. v. Pan-Atlantic Steamship Corp., 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133 (1956).

5. 44 Stat. 1424, 1927, 33 U.S.C. §§ 901–950. See particularly, 33 U.S.C. § 905.

6. Crumady v. The Joachim Hendrik Fisser, note 3 supra.

7. Mitchell v. Trawler Racer, Inc., 362 U.S. 539, 80 S.Ct. 926, 4 L.Ed.2d 941 (1960).

condition was created instantaneously.[8] The necessity for mapping a line between negligence that does not result in unseaworthiness and negligence that does result in unseaworthiness and for articulating the factors to be considered has launched an armada of cases, not all of them completely consistent. Their chartings have been analyzed, dissected, and postmortemed.[9] The delicacy of the line raises the question whether there can ever be negligence that does not result in unseaworthiness.

In Mascuilli v. United States,[10] the United States Supreme Court granted a writ of certiorari in a case that appeared to involve this issue, but its per curiam was so succinct that it has enabled lawyers to read into it what they will. Some interpret *Mascuilli* merely as finding unseaworthiness under the facts presented. Others view it as meaning that "operational negligence renders the vessel [per se] instantaneously unseaworthy." [11]

In the present case, I have found as a fact that there was no defect in the vessel or its equipment. The plaintiff's injury was caused by the joint negligence of the plaintiff and another winch operator in failing properly to correlate the operation of the two winches. The plan or method of operation was a safe one; it was negligently executed.[12]

In an effort to determine whether this case presented the issue of unseaworthiness, the court asked counsel to brief the question:

> Assuming that the cause of the injury to Robertson was the joint negligence of Robertson and Jackson, the winch runners, in operating the winches, does the negligence create unseaworthiness for which the shipowner is responsible in damages to Robertson?

█ Counsel for all parties submitted excellent briefs. While there is still doubt in my mind about what course is indicated, I have concluded that, unless negligence is to be equated with unseaworthiness, there was no unseaworthiness here, and hence recovery must be denied.

█ Mitchell v. Trawler Racer, Inc.[13] tells us that negligence and unseaworthiness are to be differentiated. The duty to provide a seaworthy vessel is not a duty to insure the safety of the seaman. It is a duty "only to furnish a vessel and appurtenances reasonably fit for their intended use. The standard is not perfection, but reasonable fitness; not a ship that will weather every conceivable storm or withstand every imaginable peril of the sea, but a vessel reasonably suitable for her intended service. Boudoin v. Lykes Bros. S.S. Co., 348 U.S. 336, 75 S.Ct. 382, 99 L.Ed. 354." [14]

█ The negligent misuse of safe and sufficient equipment may render a vessel unseaworthy. Waldron v. Moore-McCormack Lines, Inc., 1967, 386 U.S. 724, 727, 87 S.Ct. 1410, 18 L.Ed.2d 482; Crumady v. The Joachim Hendrik Fisser, 1959, 358 U.S. 423, 79 S.Ct. 445, 3 L.Ed. 2d 413; Venable v. A/S Det Forenede Dampskibsselskab, 4 Cir. 1968, 399 F.2d 347; Alexander v. Bethlehem Steel Corp., 2 Cir. 1967, 382 F.2d 963; Candiano v. Moore-McCormack Lines, Inc., 2 Cir. 1967, 382 F.2d 961; Grillea v. United States, 2 Cir. 1956, 232 F.2d 919. But as the per curiam in the petition for re-

---

8. Mascuilli v. United States, 387 U.S. 237, 87 S.Ct. 1705, 18 L.Ed.2d 743 (1967).

9. *See*, e. g., Note, 1967–68, 14 Loyola L. Rev. 176 and Note, 42 Tul.L.Rev. 648 (1968).

10. See note 8, *supra*.

11. The quote is from a comprehensive student note, 14 Loyola L.Rev. 174 (1968), in which the author concludes, " * * * no such significant and far-reaching change in the law was intended in *Mascuilli*." *Id.* at 187.

12. *Cf.* Cleary v. United States Lines Company, S.D.N.Y.1967, 287 F.Supp. 601; La Capria v. Compagnie Maritime Belge, S.D.N.Y.1968, 286 F.Supp. 980; Taylor v. S. S. Helen Lykes, E.D.La.1967, 268 F.Supp. 932, 935 n. 8; Lee v. M/S Insco Jem, N.D.Fla.1966, 259 F.Supp. 670.

13. 362 U.S. 539, 80 S.Ct. 926, 4 L.Ed.2d 941 (1960).

14. *Id.* at 550, 80 S.Ct. 933, 4 L.Ed.2d at 948–949.

hearing in *Venable* points out, not "every instance of operational negligence necessarily creates liability under the unseaworthiness doctrine." [15] If "the manner in which the longshoremen performed their duties resulted in an unseaworthy condition," [16] then the vessel owner (and his indemnitor the stevedore) are liable. While " * * * every act of negligence, no matter how short-lived, creates an unsafe condition for those exposed to it," [17] it does not necessarily create an unseaworthy vessel. [18] The lesson of *The Trawler Racer* is that negligence cannot be equated with unseaworthiness. Just as there may be unseaworthiness in the absence of negligence, there may be negligence that does not result in unseaworthiness. [19]

The eventual solution to the problem created by the exposure of longshoremen to the various risks attendant upon stevedoring a vessel is legislative. Until, however, Congress acts to revise the statutory structure, admiralty courts must thread their way through the fog without clear charts.

The ancient adoption of seamen as the wards of admiralty and the current extension of the scope of the warranty of seaworthiness, both to afford broader protection to blue water sailors and to extend protection to longshoremen who perform sailor's duties, combine to afford much broader relief to the injured longshoremen. The longshoreman is engaged in an occupation as hazardous as any in modern industry; his work-life expectancy on the wharves has been said to be as short as seven years.

The distress flag of the vessel owner is more apparent than real. The true burden of affording relief to the injured longshoreman falls on the stevedore under his warranty, usually express but today certainly implied. But there should be a more sensible way to handle the allocation of the risk than the roundabout and uneconomic voyage that must now be sailed. The injured longshoreman should not be permitted (or required) to fling his net twice, once at his employer directly, and then another time at the vessel owner in an effort to find liability for unseaworthiness and ultimate payment in damages to add to the limited statutory compensation. To the longshoreman injured on the job the difference between a hazard created by unseaworthiness and one created by negligence is hardly more intelligible than a chanty chorused in Sanskrit. He knows only that he has been hurt, at least in part by the act of someone else. If his injury came from something lawyers call unseaworthiness, he gets more money to supplement his compensation. If his injury comes from something these oracles call negligence, he is restricted to compensation. But at this moment a sensible course can be set only legislatively.

■ For the reasons rendered, judgment will be signed in favor of the defendant and against the plaintiff. There can be no doubt, however, that the vessel owner is due indemnity for the expenses of this litigation. Therefore, judgment on the third party complaint will be rendered in favor of the defendant (the vessel owner) and against the third party defendant (the stevedore). This opinion, together with the findings of fact made at the conclusion of the evidence will serve in lieu of findings of fact

---

15. 399 F.2d at 355.

16. 399 F.2d at 356.

17. Cleary v. United States Lines Company, S.D.N.Y.1967, 287 F.Supp. 601, 604 (quoting from Reid v. Quebec Paper Sales & Transp. Co., 2 Cir. 1965, 340 F.2d 34, 37).

18. If it did, the vessel owner would be required to warrant a vessel free of negligence, making it the virtual insurer of the safety of longshormen. Compare Mitchell v. Trawler Racer, Inc., note 7 *supra*, "the owner is [not] obligated to furnish an accident-free ship." 362 U.S. at 550, 80 S.Ct. at 933, 4 L.Ed.2d at 948.

19. Compare, dissenting opinion in *Venable*, note 1 *supra*, 399 F.2d at 354–355.

and conclusions of law. A form of judgment will be prepared by counsel for defendants and submitted to opposing counsel. If counsel are unable to agree on the form of judgment and on the amount of indemnity due, they will notify the court.